HERRICK, FEINSTEIN LLP
Stephen B. Selbst
Janice Goldberg
George V. Utlik
Rachel H. Ginzburg (*pro hac vice* pending)
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
sselbst@herrick.com
jgoldberg@herrick.com
gutlik@herrick.com
rginzburg@herrick.com

*Proposed Attorneys for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RLCH, INC.,<br><br>           Debtor. | Chapter 11<br><br>Case No. 20-43052 (REG) |

| | |
|---|---|
| MANUEL ROEL, Individually and Derivatively as 50% Shareholder of ROEL & HSU CORP, as 25% Shareholder of CHRL REALTY CORP., as 25% Shareholder of RLCH, Inc, and as 25% Shareholder of 190-15 48th AVENUE CORP.,<br><br>        Plaintiff,<br><br>        - against -<br><br>JOE HSU, ESTHER HSU, ROEL & HSU CORP., RLCH, INC., CHRL REALTY CORP., 190-15 48th AVENUE CORP., MOU YANG LAM, KWAN CHO CHEUNG, MING KAM CHEUNG, HEONG LENG LOU, JIM GUO LIN, KAM MING LAM, AND SIU LING WING,<br><br>        Defendants.<br><br>STEVEN CHEUNG, MING YUNG CHEUNG, GUI ZHEN CHEN, CHEUNG CHIN CHAU, TUNG SUET RUBY LAM AND WONG KUCK TAN,<br><br>        Defendants/Intervenors. | Adv. Pro. No.: 20-<br><br>NOTICE OF REMOVAL |

RLCH, Inc. ("RLCH" or the "Debtor"), by its undersigned counsel, Herrick, Feinstein LLP, respectfully submits this notice of removal (the "Notice of Removal") of the above-captioned civil action pending in the Supreme Court of the State of New York, County of Queens ("State Court"), *Roel v. Hsu*, *et al.*, Index No. 709652/2017 (the "Shareholder Litigation") to the United States District Court for the Eastern District of New York, under 28 U.S.C. § 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), with the intention that the action, upon removal, would be referred to the Honorable Robert E. Grossman, United States Bankruptcy Judge of the United States

2

Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). In support of the Notice of Removal, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

1. On August 24, 2020, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court. By filing this Notice of Removal, RLCH seeks to remove certain claims, counterclaims, and cross-claims by or against RLCH asserted in the Shareholder Litigation (the "Claims"), under 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027, from the State Court to the Bankruptcy Court for an expedited and fair resolution. Resolution of the Claims will have a necessary and material impact on the Debtor, the property of the Debtor's estate, and the Debtor's ability to reorganize under the chapter 11 of the Bankruptcy Code.

2. Specifically, RLCH seeks to remove the following 15 Claims: (a) plaintiff's claim for imposition of a constructive trust over RLCH and its assets; (b) plaintiff's claims, certain individual shareholder defendants' cross-claims, and RLCH's cross-claims against RLCH's former officers and/or directors seeking an accounting and production of RLCH's books and records from June 2008 through November 2017; (c) plaintiff's claim seeking a judgment that RLCH is liable to plaintiff as an alter ego and/or successor entity of certain non-debtor entities, and RLCH's counterclaim seeking a judgment that RLCH is not liable to Plaintiff; (d) plaintiff's and certain individual shareholder defendants' derivative claims and cross-claims brought on behalf of RLCH for breach of fiduciary duty against RLCH's former officers and directors; (e) RLCH's cross-claim for indemnification and/or contribution from its former officers and directors; (f) plaintiff's claim seeking a judgment that plaintiff owns 25% of RLCH's outstanding shares and certain individual shareholder defendants' counterclaim seeking a

judgment that plaintiff owns 16.67% of RLCH's outstanding shares; (g) plaintiff's claim and RLCH's cross-claim against a former officer and director seeking a judgment that certain unauthorized agreements purporting to sell options to purchase condominium units are void; and (h) certain individual shareholder defendants' counterclaim and cross-claim seeking the judicial dissolution of RLCH.

3. RLCH does not seek to remove the entirety of the Shareholder Litigation. The Claims are discrete and separate from the majority of the claims asserted by plaintiff and the counterclaims and cross-claims asserted by the individual shareholder defendants in the Shareholder Litigation, which are unrelated to RLCH or its assets. RLCH respectfully submits that removal of the Claims will not prejudice the rights of any non-debtor party in the Shareholder Litigation regarding the claims remaining for adjudication in the State Court.

4. Without approval of the relief requested, RLCH will not be able to reorganize. As further explained below, RLCH seeks to complete a condominium approval process and to sell condominium units to pay its creditors under a plan of reorganization. The Office of the New York State Attorney General has advised RLCH that it will not approve a condominium offering plan until the Claims in the Shareholder Litigation have been fully resolved. It is critical that RLCH obtain an expedited and fair determination of the Claims, severed from the numerous unrelated claims pending in the Shareholder Litigation.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider the Notice of Removal under 28 U.S.C. §§ 157, 1334 and 1452(a). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b). If the Bankruptcy Court determines that it does

not possess core jurisdiction over the claims subject to the Notice of Removal, the Bankruptcy Court has "related to" jurisdiction over the claims under 28 U.S.C. § 157(c).

6. The Debtor confirms its consent to the entry of a final order by the Bankruptcy Court in connection with the Notice of Removal to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

**RLCH's Bankruptcy Filing in the E.D.N.Y.**

7. On August 24, 2020 (the "Petition Date"), the Debtor commenced its bankruptcy case, Case No. 20-43052 (REG) (the "Chapter 11 Case"), by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The Debtor is authorized to remain in possession of its property and to continue to operate and manage its business as debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Case as of the filing of the Notice of Removal.

8. The Debtor owns real property (the "Property") and a building (the "Barclay Building") located at 144-69 Barclay Avenue, Flushing, NY 11355. A detailed description of the Debtor and its business, and the facts and circumstances supporting the Debtor's Chapter 11 Case, are set forth in greater detail in the *Declaration of Lisa Lam in Support of Chapter 11 Petitions and First Day Motions* [Case No. 20-43052 (REG), Dkt. No. 4] (the "Lam Declaration") and the *Declaration of Daniel Scouler, Chief Restructuring Officer, in Support of Chapter 11 Petition and First Day Motions* [Case No. 20-43052 (REG), Dkt. No. 5] (the "Scouler Declaration" and, together with the Lam Declaration, the "First Day Declarations") filed contemporaneously with the Debtor's voluntary petition for relief under the Bankruptcy Code.

9. As described more fully in the Lam Declaration, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code to reorganize its business, to expedite the resolution of certain declaratory and equitable claims in the Shareholder Litigation that have dragged on in the State Court for more than three years (which it cannot afford to continue to fund), to complete certain repairs, remediation and construction of the Barclay Building, to complete the condominium approval process, and to satisfy all of its creditors, with the goal of full recovery pursuant to a plan of reorganization.

**RLCH's Formation and Acquisition of the Barclay Property**

10. RLCH was formed as a New York corporation on June 26, 2008 for the purpose of buying, improving, selling or operating, real property as an investment vehicle. RLCH has shareholders, including a contractor with expertise in construction and a licensed real estate broker.

11. On July 11, 2008, RLCH purchased a parcel of real property located at 144-73 Barclay Avenue, Flushing, New York, designated as Block 5050, Lot 55 on the Tax Map of the Borough of Queens, County of Queens, City of New York ("Lot 55") for $1.2 million.

12. On March 6, 2012, RLCH purchased a parcel of real property directly adjacent to Lot 55, located at 144-69 Barclay Avenue, Flushing, New York, designated as Block 5050, Lot 56 on the Tax Map of the Borough of Queens, County of Queens, City of New York ("Lot 56") for $1.1 million.

13. On May 13, 2013, RLCH filed and recorded a: (i) Certificate, and (ii) Zoning Lot Description and Ownership Agreement pursuant to Section 12-10 of the Zoning Resolution to permit the use of Lot 55 and Lot 56 as a single zoning lot, the Barclay Property. In the summer of 2013, RLCH commenced demolition of existing buildings on the Barclay Property and began

construction of the Barclay Building, a seven-story mixed-use building with 23 residential apartments, a community facility, and parking spaces for automobiles.

14. The Barclay Building was completed in the fall of 2017. A final Certificate of Occupancy was issued by the New York City Department of Buildings effective as of September 27, 2017. Upon completion of the Barclay Building, RLCH planned to convert the Barclay Property into a condominium by filing a condominium offering plan to be approved by the Office of the New York State Attorney General (the "NY AG"). Upon the approval of the condominium offering plan, RLCH planned to sell the condominium units to generate revenue and ultimately dividend profits to the shareholders. Based upon the number of units, the square footage of the units, the Barclay Building finishes and amenities, and comparable sales in the area, RLCH projected in the fall of 2019 that the "sellout" value of the condominium offering was approximately $18 million.

15. However, RLCH has been unable to execute its plan of converting the Barclay Building into a condominium because it has been mired in the Shareholder Litigation in the State Court that has shown almost no progress over the past three years. Instead, the Barclay Building has been sitting vacant since the completion of construction. RLCH has recently determined that the Barclay Property has a variety of construction defects that must be remediated before it can sell condominium units. The Barclay Building is RLCH's sole asset, and while it currently generates no revenue, it has ongoing expenses relating to the ownership and necessary remediation of the Barclay Property and the accumulating fees and expenses of the Shareholder Litigation. RLCH was advised that the NY AG would not approve the Offering Plan until the Shareholder Litigation, including the dispute concerning the ownership of RLCH, is resolved.

**Shareholder Litigation in the State Court**

16. In 2017, Manuel Roel ("Roel"), a shareholder of RLCH, commenced the Shareholder Litigation individually, and derivatively on behalf of several corporate entities, including RLCH. Copies of Roel's First Amended Verified Complaint and the Debtor's Fourth Amended Verified Answer, Counterclaims and Crossclaims to the First Amended Verified Complaint are annexed hereto as Exhibit A and Exhibit B, respectively, in accordance with Bankruptcy Rule 9027(1).

17. Simultaneously with the commencement of the Shareholder Litigation, Roel also filed a Notice of Pendency against the Barclay Property, clouding title. The Notice of Pendency was cancelled on July 23, 2020, after RLCH used a portion of its pre-petition financing to post a judicial undertaking in the amount of $1 million to secure Roel's claims. A copy of the Bond as Filed is annexed hereto as Exhibit C.

18. All current shareholders of RLCH—including two shareholders who served as RLCH's former officers and/or directors from June 2008 through November 2017—are parties to the Shareholder Litigation as named defendants or as defendants-intervenors (the "Shareholder Defendants"). Copies of Verified Answer with Counterclaims by Hsus, Verified Answer with Counterclaims and Cross-Claims by Lam, Cheung, Lou, Cheung, and Chen, and Verified Answer with Cross-Claims by Lin, Lam, Wong, Chau, Lam, and Tan to Roel's First Amended Verified Complaint are annexed hereto as Exhibit D, Exhibit E and Exhibit F, respectively.

19. In the Shareholder Litigation, Roel asserts 17 causes of action, primarily against the individual defendants, sounding in breach of contract, breach of fiduciary duty and aiding and abetting breach of fiduciary duty, and fraud in connection with eleven real estate projects— only one of which is the Barclay Project—in which Roel was a partner pursuant to an alleged

oral joint venture agreement. Roel seeks compensatory damages for himself and disgorgement and restitution for the corporate entities, as well as other declaratory and equitable relief.

20.     The majority of the causes of action asserted by Roel in the Shareholder Litigation are unrelated to RLCH and/or its assets. The Shareholder Defendants also assert several counterclaims and cross-claims in the Shareholder Litigation, the majority of which are unrelated to RLCH and/or its assets. The Debtor only seeks to remove the Claims by or against RLCH, as explained below.

21.     There are approximately 15 Claims that are either asserted against RLCH, or directly impact RLCH and the Barclay Project. First, Roel has asserted a claim against RLCH in which he seeks a judgment that RLCH is the alter ego and/or successor to other corporate entities and/or individuals who were part of the other real estate projects that do not involve the Barclay Property on the ground that profits from those projects were used to fund capital contributions to RLCH. Roel seeks to hold RLCH liable for any judgment that awards him damages from these other real estate projects, an amount which Roel estimates is not less than $3 million. Roel seeks to impose a constructive trust on RLCH and the Barclay Property, pending the outcome of the Shareholder Litigation to secure his claim. In the Fourth Amended Verified Answer, RLCH asserted a counterclaim against Roel in which it seeks a judgment that it is not an alter ego or successor entity and has no liability to Roel. Pursuant to the Notice of Removal, Roel's claims against RLCH and RLCH's counterclaim against Roel should be determined by the Bankruptcy Court.

22.     Second, Roel asserts three related claims individually and derivatively on behalf of RLCH: (i) a claim of breach of fiduciary duty against current shareholders Joe Hsu and Esther Hsu (the "Hsus"); (ii) a claim for an accounting of RLCH; and (iii) a claim for access to RLCH's

books and records. All of the Shareholder Defendants, excluding the Hsus, have asserted similar derivative claims for breach of fiduciary duty and for an accounting on behalf of RLCH. In the Fourth Amended Verified Answer, RLCH asserted a cross-claim against the Hsus seeking the production of its corporate books and records and a cross-claim for indemnification and/or contribution, if RLCH is held liable for any wrongdoing for which the Hsus are responsible. By way of background, Hsus controlled RLCH and served as the sole officers and/or directors of RLCH from June 2008 to November 2017, when they resigned. RLCH's shareholders appointed a new board of directors to take over the operations of RLCH in February 2018. While some corporate documents were provided to the incoming directors in 2018, the manner in which the Hsus operated RLCH and the manner in which they accounted for use of corporate funds during their tenure is for the most part unknown by the current directors and officers. RLCH plans to investigate the Hsus' prepetition conduct in the Chapter 11 Case and related proceedings. Pursuant to the Notice of Removal, Roel's claim for an accounting of RLCH, Roel's claim for access to RLCH's books and records, and RLCH's cross-claims against the Hsus should be determined by the Bankruptcy Court.

23. Third, Roel seeks a judgment declaring that he is the owner of 25% of RLCH's outstanding shares. When the Shareholder Litigation was commenced, RLCH purportedly had 13 shareholders of record, including Roel. RLCH's corporate records include an Agreement dated December 23, 2008 stating that as of that date, RLCH had six co-equal shareholders and that Roel was the owner of 1/6 (16.67%) of RLCH's outstanding shares. Roel alleges that his signature on the December 23, 2008 Agreement is a forgery and seeks a judgment declaring the Agreement to be a product of fraud in the execution and void *ab initio*. The Shareholder Defendants, including those who purchased shares from 2014 through 2016 from three of the

initial six shareholders, dispute that Roel has a 25% interest in RLCH and assert counterclaims to obtain a declaration that Roel has a 16.67% interest in RLCH and that their ownership interests in RLCH are valid. Due to the dispute among RLCH's shareholders, RLCH is unable to confirm to the NY AG, in connection with required disclosures that must be made as part of its condominium offering plan, who the shareholders of record are and what is the percentage of each of their ownership interests. Therefore, pursuant to the Notice of Removal, Roel's claim and the Shareholder Defendants' dispute that involve RLCH and impact the Barclays' Property and its value should be determined by the Bankruptcy Court.

24.     Fourth, both Roel and RLCH have asserted claims for a declaratory judgment in the Shareholder Litigation to void certain agreements (the "Unauthorized Partnership Agreements") between Esther Hsu, and certain non-party individuals. Pursuant to the Unauthorized Partnership Agreements, Ms. Hsu personally accepted hundreds of thousands of dollars in exchange for which Ms. Hsu purported to sell a portion of her shares of RLCH stock (or interests therein), which shares (or interests) could be exchanged by the counter-parties at a later date for condominium units in the Barclay Building. When Esther Hsu entered into the Unauthorized Partnership Agreements, no condominium offering plan had been filed by RLCH with the NY AG, nor had any condominium offering plan been approved by the NY AG. Thus, any such sales by Ms. Hu would have violated the Martin Act and may also give rise to other claims. Until there is a judicial declaration that the Unauthorized Partnership Agreements are void, RLCH has potential, unquantified exposure to any party who may assert claims against RLCH arising out of or in connection with the Unauthorized Partnership Agreements. Pursuant to the Notice of Removal, Roel's claim and RLCH's claim seeking a judicial declaration that the Unauthorized Partnership Agreements are void should be determined by the Bankruptcy Court.

25. Finally, the Hsus have asserted a claim for a judgment dissolving RLCH and selling and distributing its assets to all shareholders on the alleged grounds that the RLCH's shareholders are "hopelessly deadlocked" and have "committed gross acts of malfeasance." Pursuant to the Notice of Removal, the Hsus' claim seeking a judicial dissolution of RLCH should be determined by the Bankruptcy Court.

**Status of the Shareholder Litigation**

26. Since the Shareholder Litigation was commenced in July 2017, there has been very little progress. While the claims in the Shareholder Litigation that involve RLCH are discrete and limited in nature, fact discovery has proceeded relating to all of the claims asserted by Roel, which encompass the period from approximately 2004 through 2017 and cover ten other real estate projects unrelated to RLCH and the Barclay Property.

27. The document discovery in the Shareholder Litigation has proceeded at a glacial pace. RLCH has complied with document discovery served on it. Roel's discovery and motion practice regarding discovery from the other defendant parties as well as third-parties is ongoing. The next discovery compliance conference is presently scheduled for September 25, 2020. To date, no party depositions have been held or scheduled, and none are anticipated to occur before 2021. Summary judgment motions are unlikely to be filed before the second half of 2021. Trial of this matter is likely years away. There has been no effort to mediate the Shareholder Litigation. Faced with dwindling cash resources and an urgent need to remediate the Barclay Property and to complete the condominium offering process, RLCH does not have the luxury of waiting that long. Accordingly, RLCH seek to remove the Shareholder Litigation to the Bankruptcy Court and may seek to mediate all claims in this forum.

**REQUEST FOR RELIEF UNDER 28 U.S.C. § 1452(A) AND BANKRUPTCY RULE 9027**

28. By filing this Notice of Removal, RLCH seeks to remove the Shareholder Litigation, under 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027, from the State Court to the Bankruptcy Court to expedite resolution of certain declaratory and equitable claims affecting the Debtor, the property of the Debtor's estate, and the Debtor's ability to reorganized under the chapter 11 of the Bankruptcy Code.

29. 28 U.S.C. § 1452(a) provides as follows:

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit's police or regulatory power, to the district court where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

*See* 28 U.S.C. § 1452(a).

30. Bankruptcy Rule 9027(a) provides, in pertinent part, as follows:

(2) *Time for Filing; Civil Action Initiated for Commencement of the Case Under the Code*. If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under 362 of the Code, or (C) 30 days after a trustee qualifies in a Chapter 11 reorganization case but not later than 180 days after the order for relief.

*See* Fed. R. Bankr. P. 9027(a).

31. This Notice of Removal is timely pursuant to the 90-day removal period under Bankruptcy Rule 9027(a)(2). The Shareholder Litigation was initiated and is pending in the State Court, before the commencement of the Debtor's Chapter 11 Case. Upon the commencement of the Chapter 11 Case, the Shareholder Litigation was effectively stayed as to the Debtor under section 362(a)(1) of the Bankruptcy Code. The Debtor respectfully submits that

13

the Shareholder Litigation should be referred to the Bankruptcy Court under 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027.

## THE BANKRUTPCY COURT HAS JURISDICTION
## TO ADJUDICATE THE SHAREHOLDER LITIGATION UNDER 28 U.S.C. § 1334(b)

32. Bankruptcy courts' jurisdiction is established under 28 U.S.C. § 1334(b), which states that "the district courts shall have original but not exclusive jurisdiction of all proceedings arising under title 11, or arising in or related to cases under title 11." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). Section 1334 provides the jurisdictional basis for removal of an action under 28 U.S.C. § 1452(a). District courts and bankruptcy courts may exercise "arising under," "arising in" jurisdiction, and "related to" jurisdiction. *Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.)*, 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003).

33. Under 28 U.S.C. § 1334, a bankruptcy judge may hear and determine any "core proceeding" that "arises under" or "arises in" an action under title 11 but may only hear a "non-core" proceeding if it is "related to" a bankruptcy action. *Union Turnpike, Inc. v. Howard Beach Fitness Center, Inc.*, 209 B.R. 307, 310-11 (S.D.N.Y. 1997). The Second Circuit has construed a bankruptcy court's core jurisdiction "as broadly as possible" so as to be "close to or congruent with constitutional limits." *Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail)*, 304 F.3d 223, 229 (2d Cir. 2002) (internal quotations and citations omitted). This jurisdictional reach is "essential to the efficient administration of bankruptcy proceedings." *Id.* Bankruptcy courts may adjudicate state law claims when those claims are at the "heart" of the administration of the bankruptcy estate, as is the case here. *See, e.g.*, *Central Vermont Public Serv. Corp.*, 341 F.3d 186, 191 (2d Cir. 2003) (citing *In re Ben Cooper*, 896 F.2d 1394, 1399 (2d Cir. 1991)).

34. The Claims RLCH seeks to remove to the Bankruptcy Court are "core proceedings" under 28 U.S.C. §157(b)(2) because they concern, *inter alia,* (i) the Debtor and its

bankruptcy estate, including the value of the Barclays Property, as well as the Debtor's ability to reorganize under chapter 11 of the Bankruptcy Code; (ii) the allowance or disallowance of claims of the Debtor's creditors, e.g., claims asserted by Roel against the Debtor, as well as potential claims of certain third parties arising out of or in connection with the Unauthorized Partnership Agreements (as discussed above); (iii) the Debtor's counterclaims against Roel and cross-claims asserted against Hsus, who controlled RLCH and served as the sole officers and/or directors of RLCH from June 2008 to November 2017; and (iv) the Debtor's ability to timely proceed in its attempt to reorganize under chapter 11 of the Bankruptcy Code. Therefore, the Bankruptcy Court has original but not exclusive jurisdiction over the Claims under 28 U.S.C. § 1334(b), and the Claims should be properly removed to the Bankruptcy Court under 28 U.S.C. § 1452(a).

35. In addition, if the Bankruptcy Court determines that it does not possess core jurisdiction over some claims RLCH seeks to remove to the Bankruptcy Court, the Bankruptcy Court has "related to" jurisdiction over such claims. A proceeding meets the jurisdictional threshold of 28 U.S.C. § 1334(b) for "related to" jurisdiction if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *See, e.g.*, *Publicker Industries Inc. v. United States (In re Cuyahoga)*, 980 F.2d 110, 114 (2d Cir. 1992) (stating the bankruptcy court has "related to" jurisdiction over any action that might have a "conceivable effect" on the bankrupt estate). *See also Kerusa, Co. LLC v.W10Z/515 Real Estate Ltd. Partnership*, No. 04 Civ. 708 (GEL), 2004 WL1048239 at *3 (S.D.N.Y. May 7, 2004) (claims against non-debtor were clearly "related to" bankruptcy case because they likely give rise to *contribution* or *indemnity* claims).

15

36. The Claims RLCH seeks to remove to the Bankruptcy Court are "related to" the Debtor's Chapter 11 Case because resolution of the Claims will have a necessary and material impact on the Debtor, its estate, the value of the property of the estate, administration of the Chapter 11 Case, and the Debtor's anticipated reorganization under chapter 11 of the Bankruptcy Code. Resolution of the claims asserted by Roel in the Shareholder Litigation will directly affect the assets and liabilities of the Debtor and its estate, including the amount of funds available for distribution to the Debtor's creditors. The claims will, no doubt, materially affect the Debtor and its assets, including Barclays Property and its ultimate value, and will have a significant effect on (a) the Debtor's ability to reorganize and (b) the Debtor's potential distributions to its secured and unsecured creditors under a plan of reorganization. Further, the Debtor's counterclaims against Roel and cross-claims against others are "related to" the Debtor's Chapter 11 Case because the outcome of the litigation of these claims will conceivably have a material effect upon the Debtor's estate, the Debtor's rights, and the value of the property of the estate. It is respectfully submitted that removal of these claims will assist in the administering the Debtor's estate by avoiding concurrent proceedings addressing the same subject matter. Resolution of the Claims RLCH seeks to remove to the Bankruptcy Court far exceeds the "conceivable impact" standards applied by courts in the Second Circuit. As a result, the Bankruptcy Court can and should adjudicate these claims because the Debtor's Chapter 11 Case will be directly and materially impacted by these Claims.

37. No previous application or request for relief has been made in connection with the Shareholder Litigation. After the filing of this Notice of Removal, the Debtor will give written Notice of the Filing of the Notice of Removal to Roel (a copy of which proposed notice is

annexed hereto as Exhibit G), and will file a copy of the Filing of the Notice of Notice of Removal with the County Clerk of the State Court.

**WHEREFORE**, Debtor respectfully requests that the Claims asserted in the Shareholder Litigation be removed to and adjudicated by the Bankruptcy Court.

| | |
|---|---|
| Dated: August 28, 2020<br>New York, New York | Respectfully submitted,<br><br>HERRICK, FEINSTEIN LLP<br><br>By: /s/  *George V. Utlik*_____<br>Stephen B. Selbst<br>Janice Goldberg<br>George V. Utlik<br>Rachel Ginzburg (*pro hac vice* pending)<br>2 Park Avenue<br>New York, New York 10016<br>(212) 592-1400<br>(212) 592-1500 (fax)<br>sselbst@herrick.com<br>jgoldberg@herrick.com<br>gutlik@herrick.com<br>rginzburg@herrick.com<br><br>*Proposed Attorneys for the Debtor and Debtor in Possession* |