SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

------------------------------------------------------------------------X  Index No. 709652/17

MANUEL ROEL, Individually and Derivatively
as 50% Shareholder of ROEL & HSU CORP.,
as 25% Shareholder of CHRL REALTY CORP.,
as 25% Shareholder of RLCH, INC., and as 25%
Shareholder of 190-15 48th AVENUE CORP.,

                              Plaintiff,

               -against-

JOE HSU, ESTHER HSU, ROEL & HSU CORP.,
RLCH, INC, CHRL REALTY CORP.,
190-15 48th AVENUE CORP., MOU YANG LAM,
KWAN CHO CHEUNG, MING KAM CHEUNG,
HEONG LENG LOU, JIN GUO LIN, KAM MING
LAM, and SIU LING WONG,

                           Defendants,

------------------------------------------------------------------------X

STEVEN CHEUNG, MING YUNG CHEUNG, GUI
ZHEN CHEN, CHIN CHAU CHEUNG, TUNG SUET
RUBY LAM and WONG KUK TAN,

                 Defendants/Intervenors.

------------------------------------------------------------------------X

**VERIFIED ANSWER
WITH
COUNTERCLAIMS AND
CROSS-CLAIMS
TO FIRST AMENDED
COMPLAINT**

In response to the allegations in the First Amended Complaint of Plaintiff MANUEL ROEL

("Plaintiff"), Defendants MOU YANG LAM, KWAN CHO CHEUNG, MING KAM CHEUNG,

HEONG LENG LOU, STEVEN CHEUNG, MING YUN CHEUNG, and GUI ZHEN CHEN

("Answering Defendants") allege through their attorney, THE LAW OFFICE OF AMY Y.

CHEN, PLLC by AMY Y. CHEN, as follows:

1. Answering Defendants are without knowledge or information sufficient to form a belief

    as to the truth of the allegations set forth in Paragraph 1, and therefore deny the same.

2. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2, and therefore deny the same.

3. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3, and therefore deny the same.

4. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4, and therefore deny the same.

5. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5, and therefore deny the same.

6. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6, and therefore deny the same.

7. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7, and therefore deny the same.

8. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8, and therefore deny the same.

9. Answering Defendants admit the first sentence of Paragraph 9. Answering Defendants deny the remainder of the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to

2

Case 1-20-01102-reg Doc 15 Filed 08/28/20 Entered 08/28/20 17:03:31

form a belief as to the truth of the allegations set forth in Paragraph 9, and therefore deny the same.

10. Answering Defendants deny the allegation that Plaintiff is at least a 25% owner of RLCH. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 10, and therefore deny the same.

11. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11, and therefore deny the same.

12. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12, and therefore deny the same.

13. Answering Defendants admit the allegations set forth in Paragraph 13 regarding the language spoken by Answering Defendants MOU YANG LAM and KWANG CHO CHEUNG. Answering Defendants deny the remaining allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13, and therefore deny the same.

14. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information

sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14, and therefore deny the same.

15. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15, and therefore deny the same.

16. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16, and therefore deny the same.

17. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17, and therefore deny the same.

18. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18, and therefore deny the same.

19. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19, and therefore deny the same.

20. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20, and therefore deny the same.

21. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information

Case 1-20-01102-reg Doc 15 Filed 08/28/20 Entered 08/28/20 17:03:31

sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21, and therefore deny the same.

22. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22, and therefore deny the same.

23. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23, and therefore deny the same.

24. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24, and therefore deny the same.

25. Answering Defendants admit the allegations set forth in Paragraph 25.

26. Answering Defendants admit the allegations set forth in Paragraph 26.

27. Answering Defendants admit the allegations set forth in Paragraph 27.

28. Answering Defendants admit the allegations set forth in Paragraph 28.

29. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29, and therefore deny the same.

30. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30, and therefore deny the same.

31. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24, and therefore deny the same.

32. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24, and therefore deny the same.

33. Answering Defendants admit the allegations set forth in Paragraph 33.

34. Answering Defendants deny the allegations set forth in Paragraph 34.

35. Answering Defendants admit the allegations set forth in Paragraph 35.

36. Answering Defendants admit the allegations set forth in Paragraph 36.

37. Answering Defendants admit the allegations set forth in Paragraph 37.

38. Answering Defendants admit the allegations set forth in Paragraph 38.

39. Answering Defendants admit the allegations set forth in Paragraph 39.

40. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 40, and therefore deny the same.

41. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 41, and therefore deny the same.

42. Answering Defendants admit the allegation set forth in Paragraph 42 that "when conversing with Lam and Cheung thought it was always in English," and that "Joe would speak in Chinese/Mandarin to Cheung and Lam." Answering Defendants are without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 42, and therefore deny the same.

43. Answering Defendants deny the allegations set forth in Paragraph 43 that "Cheung and Lam apparently appointed Esther." Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 43, and therefore deny the same.

44. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 44, and therefore deny the same.

45. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 45, and therefore deny the same.

46. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 46, and therefore deny the same.

47. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 47, and therefore deny the same.

48. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 48, and therefore deny the same.

49. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49, and therefore deny the same.

50. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50, and therefore deny the same.

51. Answering Defendants deny the allegation that Plaintiff comes with clean hands. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51, and therefore deny the same.

52. Paragraph 52 of the Complaint is a statement for which neither an admission nor denial is required. To the extent a response is required, Answering Defendants deny.

53. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 53, and therefore deny the same.

54. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 54, and therefore deny the same.

55. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 55, and therefore deny the same.

56. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 56, and therefore deny the same.

57. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 57, and therefore deny the same.

58. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 58, and therefore deny the same.

59. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 59, and therefore deny the same.

60. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 60, and therefore deny the same.

61. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 61, and therefore deny the same.

62. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 62, and therefore deny the same.

63. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 63, and therefore deny the same.

64. Answering Defendants admit the allegations set forth in Paragraph 64.

65. Answering Defendants deny the allegations set forth in Paragraph 65 that Lam took title. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 65, and therefore deny the same.

66. Answering Defendants deny the allegations set forth in Paragraph 66 regarding the amount of Plaintiff's share. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 66, and therefore deny the same.

67. Answering Defendants admit the allegation that "Lam signed for 190 Corp." Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 67, and therefore deny the same.

68. Answering Defendants deny the allegations set forth in Paragraph 66 concerning any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 68, and therefore deny the same.

69. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 69 regarding the percentage split between Plaintiff and Joe Hsu, and therefore deny the same. Answering Defendants admit the remainder of the allegations.

70. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 70, and therefore deny the same.

71. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 71, and therefore deny the same.

72. Answering Defendants admit the allegations set forth in Paragraph 72.

73. Answering Defendants deny the allegation set forth in Paragraph 73 that the group was "four principals." Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 73, and therefore deny the same.

74. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 74, and therefore deny the same.

75. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 75, and therefore deny the same.

76. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 76, and therefore deny the same.

77. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 77, and therefore deny the same.

78. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 78, and therefore deny the same.

79. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 79, and therefore deny the same.

80. Answering Defendants deny the allegation set forth in Paragraph 80 referring to "the group" as it is unclear to which individuals this "group" refers. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 80, and therefore deny the same.

81. Answering Defendants deny the allegations set forth in Paragraph 81 which state that Plaintiff is a 25% owner of RLCH. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 81, and therefore deny the same.

82. Answering Defendants admit the allegations contained in Paragraph 82 to the extent that they want to file for a condominium. Upon information and belief, Plaintiff and the Hsus also wanted to file for a condominium. Answer Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 82, and therefore deny the same.

83. Answering Defendants admit that some of them speak Chinese primarily and that Manny speaks Spanish primarily. Answering Defendants deny the allegations suggesting that Manny has a 25% interest in RLCH. Answer Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 83, and therefore deny the same.

84. Answering Defendants neither admit nor deny the allegations in Paragraph 84 of the Amended complaint to the extent it purports to set forth legal conclusions to which no response is required.

11

85. Answering Defendants deny the allegations set forth in Paragraph 85.

86. Answering Defendants are without knowledge or information sufficient to form a belief
    as to the truth of the allegations set forth in Paragraph 86, and therefore deny the same.

87. Answering Defendants aver that throughout the years, there had been some informal
    meetings. Answering Defendants are otherwise without knowledge or information
    sufficient to form a belief as to the truth of the allegations set forth in Paragraph 87, and
    therefore deny the same.

88. Answering Defendants deny the allegations set forth in Paragraph 88 that the projects
    were all part of a single joint venture. Answering Defendants are otherwise without
    knowledge or information sufficient to form a belief as to the truth of the allegations set
    forth in Paragraph 88, and therefore deny the same.

89. Answering Defendants deny the allegations which concern any of the Answering
    Defendants. Answering Defendants are otherwise without knowledge or information
    sufficient to form a belief as to the truth of the allegations set forth in Paragraph 89, and
    therefore deny the same.

90. Paragraph 90 of the Complaint states legal conclusions for which neither an admission
    nor denial is required.

91. Paragraph 91 of the Complaint states legal conclusions for which neither an admission
    nor denial is required. To the extent that any allegation is made against the Answering
    Defendants, Answering Defendants deny.

92. Answering Defendants repeat and reallege their answers to the allegations appearing in
    paragraphs 1-91 as if fully set forth herein.

93. Answering Defendants deny the allegations which concern any of the Answering Defendants.

94. Answering Defendants deny the allegations which concern any of the Answering Defendants.

95. Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 95, and therefore deny the same.

96. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 96, and therefore deny the same.

97. Admit that the Barclay Project is owned by RLCH. Deny the remaining allegations contained in paragraph 97.

98. Paragraph 98 of the Complaint states legal relief sought by the Plaintiff for which neither an admission nor denial is required. To the extent an answer is required, Answering Defendants deny.

99. Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-99 as if fully set forth herein.

100. Answering Defendants deny the allegations which concern any of the Answering Defendants.

101. Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-101 as if fully set forth herein.

102. Answering Defendants deny the allegations which concern any of the Answering Defendants.

13

103.     Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 103, and therefore deny the same.

104.     Answering Defendants deny the allegations which concern any of the Answering Defendants. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 104, and therefore deny the same.

105.     Paragraph 105 of the Complaint states legal relief sought by the Plaintiff for which neither an admission nor denial is required. To the extent that an answer is required, Answering Defendants deny.

106.     Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-106 as if fully set forth herein.

107.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 107, and therefore deny the same.

108.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 108, and therefore deny the same.

109.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 109, and therefore deny the same.

Case 1:20-01102-jeg Doc 15 filed 08/28/20 Entered 08/28/20 17:03:31

110.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 110, and therefore deny the same.

111.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 111, and therefore deny the same.

112.     Answering Defendants admit the allegation that Joe Hsu and Esther Hsu failed and refused to grant access to all of the books and records of the venture. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations set forth in Paragraph 112, and therefore deny the same.

113.     Answering Defendants deny the allegations set forth in Paragraph 113 concerning any of the Answering Defendants.

114.     Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-113 as if fully set forth herein.

115.     Answering Defendants deny the allegations set forth in Paragraph 115 concerning any of the Answering Defendants.

116.     Answering Defendants deny the allegations set forth in Paragraph 116 concerning any of the Answering Defendants. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations, and therefore deny the same.

117.     Answering Defendants deny the allegations set forth in Paragraph 117 concerning any of the Answering Defendants.

118.     Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-117 as if fully set forth herein.

119.     Answering Defendants deny the allegations set forth in Paragraph 119 that Lam and Cheung aided and abetted the breach of fiduciary duty, duty of loyalty and duty not to self-deal.  Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations

120.     Answering Defendants deny the allegations set forth in Paragraph 120 concerning any of the Answering Defendants.

121.     Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-120 as if fully set forth herein.

122.     Answering Defendants deny the allegations set forth in Paragraph 122 that Manny is a 25% shareholder of RLCH.  Answering Defendants otherwise deny knowledge or information as to Manny's shares in the other entities.

123.     The first part of Paragraph 123 of the Complaint purports to set forth legal conclusions for which neither an admission nor denial is required.  To the extent a response is required, Answering Defendants deny the allegations set forth in Paragraph 123 concerning any of the Answering Defendants.

124.     Paragraph 124 of the Complaint purports to set forth legal conclusions for which neither an admission nor denial is required.

125.     Answering Defendants deny the allegations set forth in Paragraph 123 concerning any of the Answering Defendants.

Case 1-20-01102-reg Doc 15 Filed 08/28/20 Entered 08/28/20 17:03:31
INDEX NO. 709652/2017
NYSCEF DOC. NO. 459 RECEIVED NYSCEF: 01/31/2019

126. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 126, to the extent that any allegation is made against Answering Defendants, Answering Defendants deny.

127. Paragraph 127 of the Complaint states legal conclusions for which neither an admission nor denial is required. To the extent that any allegation is made against the Answering Defendants, Answering Defendants deny.

128. Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-127 as if fully set forth herein.

129. Paragraph 129 of the Complaint states legal conclusions for which neither an admission nor denial is required.

130. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the first allegation set forth in Paragraph 130.

131. Answering Defendants deny the allegations set forth in Paragraph 131.

132. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the first allegation set forth in Paragraph 132.

133. Answering Defendants deny the allegations set forth in Paragraph 131.

134. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the first allegation set forth in Paragraph 132.

135. Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-134 as if fully set forth herein.

136. Paragraph 136 of the Complaint states legal conclusions for which neither an admission nor denial is required.

137.     Answering Defendants admit that Joe and Manny owned 50% of CHRL. Answering Defendants deny the remaining allegations set forth in Paragraph 137.

138.     Answering Defendants deny the allegations set forth in Paragraph 138.

139.     Answering Defendants deny the allegations set forth in Paragraph 139.

140.     Paragraph 129 of the Complaint states legal conclusions for which neither an admission nor denial is required. To the extent a response is required, Answering Defendants deny.

141.     Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-140 as if fully set forth herein.

142.     Paragraph 142 of the Complaint states legal conclusions for which neither an admission nor denial is required. To the extent a response is required, Answering Defendants deny.

143.     Answering Defendants deny the allegations set forth in Paragraph 143 concerning any of the Answering Defendants.

144.     Answering Defendants deny the allegations set forth in Paragraph 144.

145.     Answering Defendants deny the allegations set forth in Paragraph 145.

146.     Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-145 as if fully set forth herein.

147.     Paragraph 147 of the Complaint states legal conclusions for which neither an admission nor denial is required. To the extent a response is required, Answering Defendants deny.

148.     Answering Defendants deny the allegations set forth in Paragraph 148 concerning any of the Answering Defendants.

149.     Answering Defendants deny the allegations set forth in Paragraph 149 concerning any of the Answering Defendants.

150.     Paragraph 150 of the Complaint states legal conclusions for which neither an admission nor denial is required. To the extent a response is required, Answering Defendants deny.

151.     Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-150 as if fully set forth herein.

152.     Answering Defendants admit that many Roel has expressly opposed the forming of the condominium. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the first allegation set forth in Paragraph 152 and therefore deny the same.

153.     Paragraph 153 of the Complaint states legal conclusions for which neither an admission nor denial is required. To the extent a response is required, Answering Defendants deny.

154.     Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-153 as if fully set forth herein.

155.     Paragraph 155 of the Complaint states legal conclusions for which neither an admission nor denial is required. To the extent a response is required, Answering Defendants deny.

156.     Paragraph 156 of the Complaint states legal conclusions for which neither an admission nor denial is required. To the extent a response is required, Answering Defendants deny.

157.     Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-156 as if fully set forth herein.

158.     Answering Defendants deny that Plaintiff is entitled to a full accounting in connection with any of the Answering Defendants and admit the remaining allegations.

159.     Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-158 as if fully set forth herein.

160.     Paragraph 160 of the Complaint states legal conclusions for which neither an admission nor denial is required.  To the extent a response is required, Answering Defendants deny.

161.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the number of units in the Barclay Project and therefore deny the same.  Answering Defendants otherwise admit to the remaining allegations set forth in Paragraph 161.

162.     Answering Defendants admit that no offering plan has been filed and that it is the Answering Defendants' desire and intention to convert the Barclay Project into a residential condominium property.  Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 162.

163.     Answering Defendants admit the allegations in Paragraph 163 of the Amended Complaint that the Barclay Project does not presently contain condominium units.  Answering Defendants neither admit nor deny the remainder of the allegations to the extent that they purport to set forth legal conclusions as to which no response is required.  To the extent a response is required, Answering Defendants deny.

164. Answering Defendants admit the allegations in Paragraph 164 of the Amended Complaint that the Barclay Project does not presently contain condominium units. Answering Defendants neither admit nor deny the remainder of the allegations to the extent that they purport to set forth legal conclusions as to which no response is required. To the extent a response is required, Answering Defendants deny.

165. Answering Defendants admit in Paragraph 164 of the Amended Complaint that on or about September 18, 2014, a certain document referred to as the "Lottery Agreement" was created by the parties. Said document speaks for itself. Answering Defendants neither admit nor deny the remainder of the allegations to the extent that they purport to set forth legal conclusions as to which no response is required. To the extent a response is required, Answering Defendants deny.

166. Answering Defendants neither admit nor deny the allegations in Paragraph 166 of the Amended Complaint to the extent that they purport to set forth legal conclusions as to which no response is required. To the extent a response is required, Answering Defendants deny.

167. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 167 and therefore deny the same. Answering Defendants otherwise neither admit nor deny the allegations in Paragraph 167 of the Amended Complaint to the extent that they purport to set forth legal conclusions as to which no response is required. To the extent a response is required, Answering Defendants deny.

168. Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-167 as if fully set forth herein.

21

169.     Answering Defendants neither admit nor deny the allegations in Paragraph 169 of

the Amended Complaint to the extent that they purport to set forth legal conclusions as to

which no response is required.  To the extent a response is required, Answering

Defendants deny.

170.     Answering Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations set forth in Paragraph 170 and therefore deny the

same.  Answering Defendants otherwise neither admit nor deny the allegations in

Paragraph 170 of the Amended Complaint to the extent that they purport to set forth legal

conclusions as to which no response is required.  To the extent a response is required,

Answering Defendants deny.

171.     Answering Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations set forth in Paragraph 171 and therefore deny the

same.  Answering Defendants otherwise neither admit nor deny the allegations in

Paragraph 171 of the Amended Complaint to the extent that they purport to set forth legal

conclusions as to which no response is required.  To the extent a response is required,

Answering Defendants deny.

172.     Answering Defendants admit that the Barclay Project is not a condominium.

Answering Defendants are otherwise without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations set forth in Paragraph 172 and

therefore deny the same.  Answering Defendants otherwise neither admit nor deny said

remaining allegations in Paragraph 172 of the Amended Complaint to the extent that they

purport to set forth legal conclusions as to which no response is required.  To the extent a

response is required, Answering Defendants deny.

173.     Answering Defendants otherwise neither admit nor deny the allegations in Paragraph 173 of the Amended Complaint to the extent that they purport to set forth legal conclusions as to which no response is required. To the extent a response is required, Answering Defendants deny.

174.     Answering Defendants deny the allegations in Paragraph 174. Answering Defendants otherwise neither admit nor deny the allegations in Paragraph 174 of the Amended Complaint to the extent that they purport to set forth legal conclusions as to which no response is required. To the extent a response is required, Answering Defendants deny.

175.     Answering Defendants neither admit nor deny the allegations in Paragraph 175 of the Amended Complaint to the extent that they purport to set forth legal conclusions as to which no response is required. To the extent a response is required, Answering Defendants deny. Answering Defendants state that the so-called "Lottery Agreement" is a document that speaks for itself and respectfully refer all questions of law with respect to the so-called "Lottery Agreement" to the Court.

176.     Answering Defendants admit that Mou Yang Lam and/or his agent(s) placed a wok stove, and a refrigerator. Answering Defendants aver that the double sink was of the building's original design and differs from the other units because Unit 7A itself is a larger unit. Answering Defendants are otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 172, including, but not limited to, the characterization of the appliances mentioned, and therefore deny the same.

177.        Answering Defendants admit that Mou Yang Lam has caused changes to be made

to the wiring and the HVAC system in Unit 7A.  Answering Defendants otherwise deny

the remaining allegations in paragraph 177.  Answering Defendants neither admit nor

deny the allegations in Paragraph 177 of the Amended Complaint to the extent that they

purport to set forth legal conclusions as to which no response is required.  To the extent a

response is required, Answering Defendants deny.

178.        Answering Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations set forth in Paragraph 178, and therefore deny the

same.

179.        Answering Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations set forth in Paragraph 179, and therefore deny the

same.  Answering Defendants neither admit nor deny the allegations in Paragraph 179 of

the Amended Complaint to the extent that they purport to set forth legal conclusions as to

which no response is required.  To the extent a response is required, Answering

Defendants deny.

180.        Answering Defendants admit that Plaintiff's counsel had advised Answering

Defendant's counsel that Mou Yang Lam's occupancy causes an impediment to filing

since about August of 2018.  Answering Defendants otherwise neither admit nor deny the

remaining allegations in Paragraph 180 of the Amended Complaint to the extent that they

purport to set forth legal conclusions as to which no response is required.  To the extent a

response is required, Answering Defendants deny.  Answering Defendants are without

knowledge or information sufficient to form a belief as to the truth of the allegations set

forth in Paragraph 179 regarding Plaintiff's counsel's communications with Janice Goldberg, Esq., and therefore deny the same.

181.     Answering Defendants neither admit nor deny the allegations in Paragraph 181 of the Amended Complaint to the extent that they purport to set forth legal conclusions as to which no response is required. To the extent a response is required, Answering Defendants deny.

182.     Answering Defendants repeat and reallege their answers to the allegations appearing in paragraphs 1-181 as if fully set forth herein.

183.     Answering Defendants neither admit nor deny the allegations in Paragraph 169 of the Amended Complaint to the extent that they purport to set forth legal conclusions as to which no response is required. To the extent a response is required, Answering Defendants deny.

184.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 184.

185.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 185.

186.     Answering Defendants admit that RLCH is the owner of Barclay Project. Answering Defendants otherwise neither admit nor deny the allegations in Paragraph 186 of the Amended Complaint to the extent that they purport to set forth legal conclusions as to which no response is required. To the extent a response is required, Answering Defendants deny.

187.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 187, except to the extent that

the allegations in Paragraph 187 refer to documents in the judicial record of this action,

which documents speak for themselves and to which the Court is respectfully referred for

the true and correct contents thereof.

188.    Answering Defendants admit that was an officer and director of RLCH.

Answering Defendants otherwise neither admit nor deny the allegations in Paragraph 188

of the Amended Complaint to the extent that they purport to set forth legal conclusions as

to which no response is required.

189.    Answering Defendants neither admit nor deny the allegations in Paragraph 189 of

the Amended Complaint to the extent that they purport to set forth legal conclusions as to

which no response is required.

190.    Answering Defendants neither admit nor deny the allegations in Paragraph 190 of

the Amended Complaint to the extent that they purport to set forth legal conclusions as to

which no response is required.

191.    Answering Defendants repeat and reallege their answers to the allegations

appearing in paragraphs 1-181 as if fully set forth herein.

192.    Answering Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations set forth in Paragraph 192.

193.    Answering Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations set forth in Paragraph 193.

194.    Answering Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations set forth in Paragraph 194.

195.    Answering Defendants neither admit nor deny the allegations in Paragraph 189 of

the Amended Complaint to the extent that they purport to set forth legal conclusions and

legal relief as to which no response is required.

196.    Paragraph 196 of the Complaint states legal conclusions for which neither an

admission nor denial is required. To the extent that any prayer for relief is made against

any of the Answering Defendants, Answering Defendants deny.

## AFFIRMATIVE DEFENSES

Answering Defendants allege the following affirmative defenses to the allegations:

1. Underline First Affirmative Defense: The Complaint fails to state a claim against Answering
   Defendants upon which relief may be granted.

2. Second Affirmative Defense: Answering Defendants did not take part in or direct any of
   the acts complained of which resulted in Plaintiff's alleged damages.

3. Third Affirmative Defense: Plaintiff's claims against Answering Defendants are barred in
   whole, or in part, by the statute of frauds, statute of limitations, res judicata, collateral
   estoppel, or a combination of all or any doctrine.

4. Fourth Affirmative Defense: Plaintiff's claims against Answering Defendants are barred
   in whole, or in part, by a lack of consideration.

5. Fifth Affirmative Defense: Plaintiff's claims are barred by the equitable doctrines of
   waiver, estoppel, unclean hands and/or laches.

6. Sixth Affirmative Defense: A defense is founded upon documentary evidence.

27

7. <u>Seventh Affirmative Defense</u>: If the Plaintiff were caused to sustain damages set forth in the complaint, it was due to the culpable conduct of person or persons unknown, but not the conduct of the Answering Defendants.

8. <u>Eighth Affirmative Defense</u>: If the Plaintiff were caused to sustain damages alleged in her complaint, damages were the result of the culpable conduct of the Plaintiff.

9. <u>Ninth Affirmative Defense</u>: Upon information and belief, Plaintiff has contributed to his damage by self-dealing and by not acting in the best interest of the business organizations affected by the complaint.

10. <u>Tenth Affirmative Defense</u>: Upon information and belief, Plaintiff has failed to mitigate his damages and has caused the various business entities to suffer damages by failing to cooperate with the effective organization and running of the various businesses.

11. <u>Eleventh Affirmative Defense</u>: To the extent that the First Cause of Action sounding in breach of contract of the "Agreement" set forth in Paragraphs 92-98 of the Complaint is directed at any of the Answering Defendants, none of the Answering Defendants was a party to the alleged "Agreement" between Plaintiff and Defendants Joe Hsu and/or Esther Hsu.

12. <u>Twelfth Affirmative Defense</u>: To the extent that the First Cause of Action sounding in breach of contract of the "Agreement" set forth in Paragraphs 92-98 of the Complaint is directed at any of the Answering Defendants, the First Cause of Action is barred by the Statute of Frauds.

13. <u>Thirteenth Affirmative Defense</u>: To the extent that the First Cause of Action sounding in breach of contract of the "Agreement" set forth in Paragraphs 92-98 of the Complaint is directed at any of the Answering Defendants, none of the Answering Defendants were in

charge of collecting and distributing proceeds; and none of the Answering Defendants

were in charge of keeping accounts with the Plaintiff regarding his labor and materials,

outlays, and expenses; nor did the Plaintiff ever provide an accounting to any of the

Answering Defendants regarding his labor and materials, outlays, and expenses.

14. Fourteenth Affirmative Defense:  To the extent that the First Cause of Action sounding in

breach of contract of the "Agreement" set forth in Paragraphs 92-98 of the Complaint is

directed at any of the Answering Defendants, Plaintiff expressly acknowledged by action

and by written instrument that his interest in RLCH is a 1/6 share.

15. Fifteenth Affirmative Defense:  To the extent that the Second Cause of Action sounding

in unjust enrichment is directed at any of the Answering Defendants, Plaintiff failed to

allege how each of the Answering Defendants were in a confidential or fiduciary

relationship with the Plaintiff.

16. Sixteenth Affirmative Defense:  To the extent that the Second Cause of Action sounding

in unjust enrichment is directed at any of the Answering Defendants, if the benefit

bestowed requires written contracts satisfying the Statue of Frauds for recovery,

Plaintiff's claim would be barred.

17. Seventeenth Affirmative Defense: To the extent that the Third Cause of Action sounding

in tortious interference with business contracts/relations is directed at any of the

Answering Defendants, it is barred because no valid contract existed, as it is barred by

the statute of frauds.

18. Eighteenth Affirmative Defense: To the extent that the Third Cause of Action sounding

in tortious interference with business contracts/relations is directed at any of the

Answering Defendants, it is not alleged that any of the Answering Defendants were aware of any alleged agreement between Plaintiff and Joe Hsu and/or Esther Hsu.

19. Nineteenth Affirmative Defense: To the extent that the Third Cause of Action sounding in tortious interference with business contracts/relations is directed at any of the Answering Defendants, Plaintiff's claim is barred by ratification.

20. Twentieth Affirmative Defense: To the extent that the Third Cause of Action sounding in tortious interference with business contracts/relations is directed at any of the Answering Defendants, Plaintiff's claim is barred because all actions by Answering Defendants were orchestrated and directed by Joe Hsu, a party to the alleged subject "Agreement."

21. Twenty-First Affirmative Defense: To the extent that the Fourth Cause of Action sounding in Fraud is directed at any of the Answering Defendants, Plaintiff's claim is barred as Plaintiff fails to allege with particularity any fraudulent conduct on the part of the Answering Defendants.

22. Twenty-Second Affirmative Defense: To the extent that the Fifth Cause of Action, sounding in breach of fiduciary duty, duty of loyalty, duty not to self-deal, duty of good faith and fair dealing relative to the Agreement, is directed at any of the Answering Defendants, Joe Hsu and/or Esther Hsu was/were the treasurer(s).

23. Twenty-Third Affirmative Defense: To the extent that the Fifth Cause of Action, sounding in breach of fiduciary duty, duty of loyalty, duty not to self-deal, duty of good faith and fair dealing relative to the Agreement, is directed at any of the Answering Defendants, none of the Answering Defendants had the authority to collect proceeds and distribute proceeds from any of the projects.

30

24. <u>Twenty-Fourth Affirmative Defense</u>: To the extent that the Fifth Cause of Action, sounding in breach of fiduciary duty, duty of loyalty, duty not to self-deal, duty of good faith and fair dealing relative to the Agreement, is directed at any of the Answering Defendants, upon information and belief, Answering Defendants are victims, rather than perpetrators, of the acts on the part of Joe Hsu and Esther Hsu complained of by the Plaintiff.

25. <u>Twenty-Fifth Affirmative Defense</u>: To the extent that the Sixth Cause of Action, sounding in aiding and abetting breach of fiduciary duty, duty of loyalty, duty not to self-deal, duty of good faith and fair dealing relative to the Agreement, is directed at any of the Answering Defendants, Plaintiff fails to allege that any of the Answering Defendants knowingly induced or participated in any of Joe Hsu's action which constitutes a breach of the various duties listed by the Plaintiff.

26. <u>Twenty-Sixth Affirmative Defense</u>: To the extent that the Sixth Cause of Action, sounding in aiding and abetting breach of fiduciary duty, duty of loyalty, duty not to self-deal, duty of good faith and fair dealing relative to the Agreement, is directed at any of the Answering Defendants, upon information and belief, Answering Defendants are victims, rather than perpetrators, of the acts of Joe Hsu and Esther Hsu complained of by the Plaintiff.

27. <u>Twenty-Seventh Affirmative Defense</u>: To the extent that the Seventh Cause of Action, the derivative claim, is directed at any of the Answering Defendants, Joe Hsu and/or Esther Hsu was/were the *de facto* treasurer(s).

28. <u>Twenty-Eighth Affirmative Defense</u>: To the extent that the Seventh Cause of Action, the derivative claim, is directed at any of the Answering Defendants, none of the Answering

Defendants is in possession of the accounting records aside from what have been provided to them by Joe Hsu and/or Esther Hsu, and which have already been shared with the Plaintiff.

29. Twenty-Ninth Affirmative Defense: To the extent that the Seventh Cause of Action, the derivative claim, is directed at any of the Answering Defendants, Plaintiff's claims are barred by CPLR 3016(b), in that none of the Answering Defendants is a director of the any of the corporate entities.

30. Thirtieth Affirmative Defense: To the extent that the Seventh Cause of Action, the derivative claim, is directed at any of the Answering Defendants, Plaintiff's claims are barred by CPLR 3016(b), in that the complaint fails to set forth with particularity the wrongful acts committed by any of the Answering Defendants.

31. Thirty-First Affirmative Defense: To the extent that the Eighth Cause of Action, sounding in fraud in the execution and forgery, is directed at any of the Answering Defendants, a document dated December 23, 2008 was not executed in the presence of any of the Answering Defendants, and a copy of said document allegedly signed by the Plaintiff was provided by Joe Hsu.

32. Thirty-Second Affirmative Defense: To the extent that the Eighth Cause of Action, sounding in fraud in the execution and forgery, is directed at any of the Answering Defendants, the December 23, 2008 document was a shareholder agreement for RLCH, Inc. If authenticated, it would be applicable to all assets acquired by RLCH, Inc. whether or not it was in existence at the time the document was signed.

33. Thirty-Third Affirmative Defense: As to the Ninth Cause of Action, Plaintiff expressly acknowledged by action and by written instruments that his interest in RLCH is a 1/6 share.

34. Thirty-Fourth Affirmative Defense: As to the Tenth Cause of Action for Declaratory Judgment, Plaintiff fails to state a cause of action.

35. Thirty-Fifth Affirmative Defense: As to the Eleventh Cause of Action for piercing the corporate veil, to the extent that it is directed at any of the Answering Defendants, Plaintiff fails to state a cause of action

36. Thirty-Sixth Affirmative Defense: As to the Twelfth Cause of Action for permanent injunction, Plaintiff expressly consented by action and in writing that the Barclay Project was to be converted into a condominium.

37. Thirty-Seventh Affirmative Defense: As to the Thirteenth Cause of Action for permanent injunction, Plaintiff fails to state a cause of action for imposition of a constructive trust, and that the equitable remedy of a constructive trust is wholly inapplicable to the claims of the Plaintiff.

38. Thirty-Eighth Affirmative Defense: Plaintiff's claims, are barred due to the conflict that exists when simultaneously filing direct and derivative claims.

39. Thirty-Ninth Affirmative Defense: Plaintiff's claims are barred due to the lack of a demand, as required for filing derivative actions.

40. Fortieth Affirmative Defense: Plaintiff's Fifteenth Cause of Action is barred because there is no private right of action under the Martin Act.

41. Forty-First Affirmative Defense: Plaintiff's Fifteenth Cause of Action is without merit because Lottery Agreement does not violate the Martin Act.

42. Forty-Second Affirmative Defense:  Plaintiff's Fifteenth Cause of Action is without merit because contracts allocating future interests are not prohibited by the law.

43. Forty-Third Affirmative Defense:  Plaintiff has no standing to bring the Sixteenth Cause of Action.

44. Forty-Fourth Affirmative Defense: Plaintiff fails to state a cause of action for ejectment in the Sixteenth Cause of Action:

45. Forty-Fifth Affirmative Defense: Plaintiff is not authorized to bring any derivative claims on behalf of the corporations which have been dissolved and/or no longer exists as a legal entity.

## RESERVATION OF RIGHTS

46. Answering Defendants the right to amend this Verified Answer to assert any additional affirmative defenses that may become apparent through discovery or otherwise.

## CROSS-CLAIMS AND COUNTERCLAIMS

### Introduction

1. At all times hereinafter mentioned, Defendant MOU YANG LAM is a 10% shareholder of Defendant CHRL REALTY CORP. (hereinafter, "CHRL"), a 25% of 190-15 48th Avenue Corp. (hereinafter, "190 Corp."), and a 1/6 shareholder of RLCH, INC. (hereinafter, "RLCH").

34

2. At all times hereinafter mentioned, Defendant KWAN CHO CHEUNG is a 15% shareholder of CHRL, a 25% shareholder of 190 Corp. He was originally a 1/6 shareholder of RLCH, having acquired said shares in or about 2008.

3. Defendants MOU YANG LAM, KWAN CHO CHEUNG, MING KAM CHEUNG, HEONG LEN LOU, KAM MING LAM, and JIN GUO LIN are shareholders of CHRL.

4. Defendants MOU YANG LAM, and KWAN CHO CHEUNG are shareholders of 190 Corp.

5. Defendants MOU YANG LAM, KWAN CHO CHEUNG, JIN GUO LIN, KAM MING LAM, and SIU LING WONG, STEVEN CHEUNG, MING YUNG CHEUNG, GUI ZHEN CHEN, CHEUNG CHIN CHAU, TUNG SUET RUBY LAM, and WONG KUK TAN are shareholders of RLCH.

6. Defendant/Intevenor MING YUNG CHEUNG is an individual residing at 247 Piccadilly Downs, Lynbrook, NY 11563.

7. In or about 2013, Defendant/Intevenor MING YUNG CHEUNG acquired ¼ of Defendant KWAN CHO CHEUNG's 1/6 interest in RLCH, and thereby became a 1/24, or 4.167% shareholder of RLCH.

8. Said transaction was ratified by Defendants JOE HSU and ESTHER HSU.

9. Defendant/Intevenor GUI ZHEN CHEN is an individual residing at 90-21 51st Street, Elmhurst, NY 11373.

10. In or about 2013, Defendant/Intevenor GUI ZHEN CHEN acquired ¼ of Defendant KWAN CHO CHEUNG's 1/6 interest in RLCH, and thereby became a 1/24, or 4.167% shareholder of RLCH.

11. Said transaction was ratified by Defendants JOE HSU and ESTHER HSU.

35

12. Defendant/Intevenor STEVEN CHEUNG is an individual residing at 75-43 185th Street, Fresh Meadows, NY 11366.

13. In or about 2016, Defendant/Intevenor GUI ZHEN CHEN acquired ¼ of Defendant KWAN CHO CHEUNG's 1/6 interest in RLCH, and thereby became a 1/24, or 4.167% shareholder of RLCH.

14. Said transaction was ratified by Defendants JOE HSU and ESTHER HSU.

15. Defendants MOU YANG LAM and KWAN CHO CHEUNG bring this action on behalf of themselves and all other stockholders of defendants CHRL similarly situated.

16. Defendants MOU YANG LAM and KWAN CHO CHEUNG bring this action on behalf of themselves and all other stockholders of defendants 190 Corp. similarly situated.

17. Defendants MOU YANG LAM and KWAN CHO CHEUNG bring this action on behalf of themselves and all other stockholders of defendants RLCH similarly situated.

18. Upon information and belief, at all times hereinafter mentioned, Defendant CHRL was organized under and by virtue of the laws of the State of New York.

19. Defendant CHRL was under the complete operation and control of Defendant JOE HSU Defendant ESTHER HSU, and the Plaintiff. Plaintiff was in complete operation and control of the construction aspect of the CHRL Project. Defendant JOE HSU and Defendant ESTHER HSU were in complete operation and control of all the remaining aspects of the project, including, but not limited to maintaining the books and record of all transactions and rendering business decisions where necessary.

20. Upon information and belief, Defendant CHRL had its principal place of business care of Joe Hsu at 62-14 138th Street, Flushing, New York 11367. It was formed on February 3, 2006 and was dissolved on May 24, 2010.

21. In or about October 2011, Defendant JOE HSU conducted a final accounting for CHRL with Answering Defendants who are shareholders of CHRL.

22. Answering Defendants were not aware of CHRL's dissolution.

23. Upon information and belief, at all times hereinafter mentioned, Defendant 190 Corp. was organized under and by virtue of the laws of the State of New York.

24. Defendant 190 Corp. was under the complete operation and control of Defendant JOE HSU and Defendant ESTHER HSU. Plaintiff was in complete operation and control of the construction aspect of the 190 Corp. Project.

25. Defendant JOE HSU and Defendant ESTHER HSU were in complete operation and control of all the remaining aspects of the project, including, but not limited to maintaining the books and record of all transactions and rendering business decisions where necessary.

26. Upon information and belief, Defendant 190 Corp. had its principal place of business care of Joe Hsu at 62-14 138th Street, Flushing, New York 11367. It was formed on November 18, 2008 and was dissolved on June 6, 2013.

27. Answering Defendants were not aware of 190 Corp.'s dissolution.

28. Upon information and belief, at all times hereinafter mentioned, Defendant RLCH was organized under and by virtue of the laws of the State of New York.

29. Defendant RLCH was under the complete operation and control of Defendant JOE HSU and Defendant ESTHER HSU.

30. Answering Defendants adapt the allegations regarding their residences as set forth in Plaintiff's complaint.

31. At all times hereinafter mentioned, no directors were ever elected by the shareholders for CHRL, 190 Corp. and RLCH.

32. As CHRL, 190 Corp., and RLCH were under the complete operation and control of the Plaintiff, Defendants JOE HSU and ESTHER HSU, at all times hereinafter mentioned, the three of them are the *de facto* directors and officers of said corporate defendants.

33. Defendants KWAN CHO CHEUNG and MOU YANG LAM are unsophisticated immigrants from China with limited education and limited English skills.

34. There were instances where Defendants MOU YANG LAM and Defendant KWAN CHO CHEUNG would execute documents as an officer of CHRL, or 190 Corp., or RLCH. However, any such documents were executed at Defendant JOE HSU's direction, as Defendants LAM and CHEUNG wholly trusted Defendant JOE HSU's business judgment.

35. In or about the summer of 2005, Defendant KWAN CHO CHEUNG met Defendant JOE HSU at an open house. Defendant JOE HSU was the broker and owner of Big Apple Realty. At the open house, Defendant JOE HSU invited all attendees, including Defendant KWAN CHO CHEUNG to join in on future real estate development investment opportunities.

36. Defendant KWAN CHO CHEUNG accepted Defendant JOE HSU's invitation and then invited Defendant MOU YANG LAM to join Defendant JOE HSU's ventures.

37. Defendants KWAN CHO CHEUNG and MOU YANG LAM's first project with Defendant JOE HSU was the CHRL project.

38. All Answering Defendant who took part in the CHRL Project were silent investors.

39. Defendant CHRL was involved in the development of five parcels of land, 149-18/22/26 Sanford Avenue and 42-14/16 149hth Place, which corresponds to the project described as "The Sanford Avenue Project" in Plaintiff's complaint, Paragraphs 73-74.

40. The CHRL Project was constructed by the Plaintiff. Plaintiff never provided Answering Defendants with an accounting of his expenditures.

41. Defendants KWAN CHO CHEUNG and MOU YANG LAM's second project with Defendant JOE HSU was the 190 Corp. project.

42. Defendants KWAN CHO CHEUNG and MOU YANG LAM were silent investors in the 190 Corp. project.

43. Defendant 190 Corp. was involved in the development of three pieces of real estate, to wit: 1) 51-82 Manilla Street, Elmhurst, New York, which corresponds to Plaintiff's "The Manilla Street Project" as set forth in his Complaint, Paragraphs 64-66; 2) 190 -15 48th Avenue, Fresh Meadows, New York, which corresponds to Plaintiff's "The 48th Avenue Project" as set forth in his Complaint, Paragraph 67 and 68; and 3) 211-22 46th Avenue, Bayside, New York, which corresponds to Plaintiff's "The 46th Avenue Project" as set forth in his Complaint Paragraphs 69-72.

44. The 190 Corp. Project was constructed by the Plaintiff. Plaintiff never provided Answering Defendants with an accounting of his expenditures.

45. Defendants KWAN CHO CHEUNG and MOU YANG LAM's third project with Defendant JOE HSU was the RLCH project.

46. Defendant RLCH is involved in the development of two pieces of real estate, to wit: 1) 144-73 Barclay Avenue, Flushing, New York; and 2) 144-69 Barclay Avenue, Flushing,

New York, both of which correspond to Plaintiff's "The Barclay Project" as set forth in his Complaint, Paragraphs 80-84.

47. The RLCH Project was constructed by a third-party contractor.

48. For the CHRL Project, Defendants JOE HSU and ESTHER HSU completely operated and controlled all transactions. They failed to provide Answering Defendants access to any of the bookkeeping records of any of the transactions.

49. Defendant JOE HSU and ESTHER HSU would, from time to time, demand contribution from participating Answering Defendants by using Defendant MOU YANG LAM as the point of contact.

50. From time to time, upon demand by Defendant MOU YANG LAM, Defendant JOE HSU and ESTHER HSU would provide scant few records to Defendant MOU YANG LAM, which generally contain conclusory rather than detailed accounting figures, to account for profits and losses for each project.

51. As a result, in an effort to make sense out of Defendant JOE HSU Defendant MOU YANG LAM, kept his own records of contribution from participating Answering Defendants and records of the limited corporate expenditure of which he had knowledge, and shared his records with the participating Defendants.

52. With the initiation of the CHRL and RLCH Projects in 2008, participating Answering Defendants felt that the past accounting practice from Defendants JOE HSU and ESTHER HSU in the CHRL Project had been inadequate. As a result, participating Answering Defendants requested that Defendant MOU YANG LAM act as their representative in keeping track of the shareholder contributions and corporate expenditures of RLCH.

40

53. Consequently, participating Answering Defendants demanded to Defendant JOE HSU that Defendant MOU YANG LAM be made a signatory of the 190 Corp. and the RLCH bank accounts, which demand was approved by Defendant JOE HSU.

54. For the 190 Corp. bank account, Defendant MOU YANG LAM was made a co-signatory for checks. All checks must be co-signed by Defendants JOE HSU and MOU YANG LAM. Said requirement turned out to be unduly burdensome for both Defendant Lam and Defendant Hsu as they were often at two different locations when checks had to be written. Therefore, for the sake of convenience, Defendant Lam would often pre-sign a batch of checks for Defendant JOE HSU to issue whenever necessary.

55. For the 190 Corp. bank account, Defendant MOU YANG LAM was thereby granted access to the bank statements. Defendants would monitor the statements for any irregularities. However, he never noticed anything unusual, as he primarily monitored for self-dealing on the part of Defendants JOE HSU and ESTHER HSU.

56. Although Defendant MOU YANG LAM was made a signatory of the 190 Corp. checks, only Defendant JOE HSU and/or ESTHER HSU rendered the business judgments as to what checks to write. Further, only Defendants JOE HSU and ESTHER HSU kept a full record of all the expenditures of 190 Corp. Participating Answering Defendants had no access to any transactions that did not go through the corporate bank account.

57. For the RLCH bank account, Defendant MOU YANG LAM was made a signatory for checks. Defendants JOE HSU and MOU YANG LAM decided that the co-sign requirement was unduly burdensome.

58. For the 190 Corp. bank account, Defendant MOU YANG LAM was thereby granted access to the bank statements. Defendants would monitor the statements for any

irregularities. However, he never noticed anything unusual, as he primarily monitored for self-dealing on the part of Defendants JOE HSU and ESTHER HSU.

59. Although Defendant MOU YANG LAM was made a signatory of the RLCH checks, only Defendant JOE HSU and/or ESTHER HSU rendered the business judgments as to what checks to write. Further, Defendants JOE HSU and ESTHER HSU kept the majority of the checks, and only issued a few to Defendant LAM for emergencies when they are out of time.

60. As with 190 Corp., Defendants JOE HSU and ESTHER HSU kept a full record of all the expenditures of RLCH. Participating Answering Defendants had no access to any transactions that did not go through the corporate bank account.

61. Answering Defendants/Intevenors have not had any direct contact with the Plaintiff, Defendant JOE HSU, and Defendant ESTHER HSU.

62. Answering Defendants/Intevenors never took part in any matters concerning the operation of RLCH, aside from providing monetary investment.

63. Answering Defendants/Intevenors obtained all their information regarding RLCH through Defendant KWAN CHO CHEUNG.

## AS AND FOR A FIRST CROSS-CLAIM AGAINST JOE HSU AND ESTHER HSU – Derivative Action for An Accounting

64. Answering Defendants repeat and reallege each and every allegation set forth above as if fully set forth herein.

65. Upon information and belief, the source of information being Plaintiff's Verified Complaint, Defendants JOE HSU and ESTHER HSU used the business of CHRL, 190 Corp. and RLCH to further their own financial ends, at the expense of Answering Defendants.

66. Upon information and belief, the source of information being Plaintiff's Verified Complaint, Defendants JOE HSU and ESTHER HSU failed and refused to provide genuine backup of all of the paperwork for all of their transactions which they had been working on since 2005.

67. Defendants JOE HSU and ESTHER HSU failed and refused to provide the details of the transactions of the CHRL Project and the 190 Project and the financial outcomes of the same.

68. Upon information and belief, the source of information being Plaintiff's Verified Complaint, Defendants JOE HSU and ESTHER HSU failed to properly account to the Plaintiff for his labor and materials furnished to the CHRL Project and the 190 Corp. Project.

69. Upon information and belief, the source of information being Plaintiff's Verified Complaint, Defendants JOE HSU and ESTHER HSU commingled funds belonging to the Plaintiff into the accounts of RLCH Project.

70. At all relevant times, it was and continues to be the duty of Defendant JOE HSU and Defendant ESTHER HSU, as *de facto* directors and officers of Defendants CHRL, 190 Corp. and RLCH, to see that the assets and business of Defendants CHRL, 190 Corp. and RLCH were and are diligently and honestly conserved and managed, and to see that same are not dissipated and mismanaged. In violation of their duty, they caused and permitted

and, at present, are continuing to cause and permit, the assets, business and corporate opportunities of Defendants CHRL, 190 Corp. and RLCH to be wasted and mismanaged by diverting same to their own benefit, wrongfully withholding allegedly owed to the Plaintiff, and have subjected Answering Defendants to the instant lawsuit.

71. As a result of the acts alleged, Defendants JOE HSU and ESTHER HSU, have directly and indirectly profited and are continuing to profit at the expense of Defendants CHRL, 190 Corp. and RLCH, and Defendants CHRL, 190 Corp. and RLCH have sustained and is continuing to sustain additional losses, all in an amount presently unknown to Answering Defendants and ascertainable only by an accounting.

72. No demand has been made upon the Board of Directors of Defendants CHRL, 190 Corp. and RLCH to bring an action for relief appropriate to the facts alleged, inasmuch as: 1) Defendants JOE HSU, and ESTHER HSU whose acts are complained of are in control of Defendants CHRL, 190 Corp. and RLCH; and 2) no Board of Directors were ever elected for Defendants CHRL, 190 Corp. and RLCH. A demand upon the Board of Directors would therefore be a futile act.

73. By virtue of the acts complained of, Defendants CHRL, 190 Corp. and RLCH have sustained and are continuing to sustain irreparable injury.

74. Answering Defendants have no adequate remedy at law.

## AS AND FOR A SECOND CROSS-CLAIM AGAINST JOE HSU AND ESTHER HSU – Derivative Action for Breach of Fiduciary Duty of Care, Duty of Loyalty, and Duty of Disclosure

75. Answering Defendants who are shareholders of CHRL and 190 Corp. (hereinafter, "CHRL and 190 Answering Defendants"), repeat and reallege each and every allegation set forth above as if fully set forth herein.

76. As the *de facto* directors and officers of Defendants CHRL and 190 Corp., Defendants JOE HSU and ESTHER HSU owe a fiduciary duty to each of said Corporate Defendants' shareholders.

77. Defendants JOE HSU and ESTHER HSU owe a duty of care to each of said Corporate Defendants' shareholders.

78. Defendants JOE HSU and ESTHER HSU are subject to heightened standard of care because they injected themselves in the detailed management of Defendants CHRL and 190 Corp.

79. Defendants JOE HSU and ESTHER HSU have breached their duty of care by failing to properly transfer the real estate of the CHRL Project into CHRL.

80. Defendants JOE HSU and ESTHER owe a duty of loyalty to each of said Corporate Defendants' shareholders

81. Upon information and belief, Defendants JOE HSU and ESTHER HSU breached their duty of loyalty by taking monies for real estate brokerage fees without permission and without a written agreement, and taking exorbitant bookkeeping fees without consent.

82. Defendants JOE HSU and ESTHER owe a duty of disclosure to each of said Corporate Defendants' shareholders

83. Upon information and belief, Defendants JOE HSU and ESTHER HSU breached their duty of disclosure by failing to disclose self-dealing transactions, i.e. taking monies for real estate brokerage fees without permission and without a written agreement, and taking exorbitant bookkeeping fees without consent.

84. As a result of Defendant JOE HSU and Defendant ESTHER HSU's foregoing breaches, shareholders of said Corporations have been damaged in an amount to be determined at trial, for which Defendants JOE HSU and ESTHER HSU are personally liable.

## AS AND FOR A THIRD CROSS-CLAIM AGAINST JOE HSU – Fraud

85. Those Answering Defendants who are shareholders of RLCH (hereinafter, "RLCH Answering Defendants") repeat and reallege each and every allegation set forth above as if fully set forth herein.

86. Defendant JOE HSU is personally liable for the following acts of fraud, as he perpetrated the fraud and had actual knowledge of the fraud.

87. Prior to March 19, 2012, Defendant JOE HSU stated to Defendant MOU YANG LAM that RLCH held certain funds belonging to the Plaintiff.

88. On or about March 19, 2012, Defendant JOE HSU authorized a payment in the amount of THREE HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($300,000) from RLCH's Chase corporate bank account to the Plaintiff.

89. On or about March 19, 2012, Defendant JOE HSU authorized a second payment in the amount of TWO HUNDRED SIXTY-EIGHT THOUSAND FIVE HUNDRED EIGHTY FIVE DOLLARS AND THIRTY-SIX CENTS ($268,585.36) from RLCH's Chase corporate bank account to the Plaintiff.

90. On or about March 19, 2012, Defendant JOE HSU stated to Defendant MOU YANG LAM that said two payments represented all of the remaining funds belonging to the Plaintiff which were being held by RLCH which originated from the CHRL and 190 Corp. projects; and that with these payments, RLCH no longer held funds belonging to the Plaintiff originating from the CHRL and 190 Corp. projects.

91. Defendant MOU YANG LAM thereafter relayed Defendant JOE HSU's said statement to the remaining Defendants who are shareholders of RLCH.

92. In the event that Plaintiff succeeds on his claim that after March 19, 2012, RLCH's assets continue to contain funds belonging to Plaintiff originating from the CHRL and 190 Corp. projects, then RLCH Answering Defendants alleged the following:

93. Upon information and belief, Defendant JOE HSU's representation contained in Paragraph 90 is false.

94. Upon information and belief, Defendant JOE HSU knew his representation contained in Paragraph 90 to be false when he made it.

95. Upon information and belief, Defendant JOE HSU made the representation contained in Paragraph 90 to induce RLCH Answering Defendants' reliance upon said statement so they would continue to invest in RLCH with the belief that they are entitled to the full value of each party's respective shares.

96. RLCH Answering Defendants relied upon said statement and continued to invest in RLCH with the belief that they are entitled to the full value of each party's respective shares.

97. As a result of RLCH Answering Defendants' reliance upon said statement, RLCH Answering Defendants have been injured in the form of reduction of value of each

party's respective shares in the amount claimed by the Plaintiff, in an amount to be

determined at trial.

## AS AND FOR A FOURTH CROSS-CLAIM AGAINST JOE HSU – Fraud

98. Those Answering Defendants who are shareholders of RLCH (hereinafter, "RLCH

Answering Defendants") repeat and reallege each and every allegation set forth above as

if fully set forth herein.

99. Defendants JOE HSU is personally liable for the following acts of fraud, as he

perpetrated the fraud and had actual knowledge of the fraud.

100.     At the time when Defendant JOE HSU invited Defendants MOU YANG LAM

and KWANG CHO CHEUNG to join the RLCH project, Defendant JOE HSU

represented to them that he would have 1/6 of RLCH's outstanding shares, Plaintiff

would have 1/6 of RLCH's outstanding shares, and 4/6 of RLCH's outstanding shares

were available for investors.

101.     Said representation was material in Defendants MOU YANG LAM and KWANG

CHO CHEUNG decision to join the RLCH project.

102.     In reliance of the representation contained in Paragraph 100, Defendants MOU

YANG LAM and KWANG CHO CHEUNG paid certain funds to join the RLCH project,

taking 2/6 of the RLCH's outstanding shares.

103.     As a result of said representation, Defendant KWANG CHO CHEUNG

represented to Answering Defendants/Intevenors that he acquired 1/6 of the shares of

RLCH.

104. In reliance of said representation, Answering Defendants/Intervenors paid certain funds to invest in RLCH to each acquire their 1/24 of the shares of RLCH.

105. In the event that Plaintiff succeeds on his claim that he owns 25% of RLCH's outstanding shares, then RLCH Answering Defendants alleged the following:

106. Defendant JOE HSU's representation contained in Paragraph 100 is false.

107. Upon information and belief, Defendant JOE HSU knew his representation contained in Paragraph 100 to be false when he made it.

108. Upon information and belief, Defendant JOE HSU made the representation contained in Paragraph 100 to induce RLCH Answering Defendants' reliance upon said statement so they would to invest in RLCH with the belief that they are entitled to a total of 2/6 of all outstanding shares of RLCH.

109. RLCH Answering Defendants relied upon said statement and invested in RLCH with the belief that they are entitled to a total of 2/6 of all outstanding shares of RLCH.

110. As a result of RLCH Answering Defendants' reliance upon said statement, RLCH Answering Defendants have been injured in the form of the dilution of their shares of RLCH, with a monetary value to be determined at trial.

111. On or about December 23, 2008, Defendants SIU LING WONG, KAM MING LAM, MOU YANG LAM, and KWAN CHO CHEUNG executed an Agreement with Defendant JOE HSU, in the absence of the Plaintiff, which provides, *inter alia*, that RLCH intends to develop 144-73 Barclay Avenue, Flushing, NY 11355 into a multi-unit condominium; and that each of said Defendants would receive one-sixth of the profits derived from the project.

112.     After said Defendants executed said Agreement, Defendant JOE HSU said took

said Agreement, and promised to get Plaintiff's signature.

113.     Shortly thereafter, Defendant JOE HSU provided a copy of said Agreement with a

signature for the Plaintiff to Defendant MOU YANG LAM, and represented to MOU

YANG LAM that Plaintiff had signed said Agreement.

114.     Defendant MOU YANG LAM provided said copy to the remaining participating

Answering Defendants.

115.     In the event that Plaintiff succeeds in his claim of forgery of his signature on said

December 23, 2008 Agreement, then RLCH Answering Defendants alleged the following:

116.     Defendant JOE HSU's representations contained in Paragraphs 112 and 113 are

false.

117.     Upon information and belief, Defendant JOE HSU knew his representations

contained in Paragraphs 112 and 113 to be false when he made it.

118.     Upon information and belief, Defendant JOE HSU made the representations

contained in Paragraphs 112 and 113 to induce RLCH Answering Defendants' reliance

upon said statement so they would to invest in RLCH with the belief that Plaintiff had

agreed to be a 1/6 shareholder of RLCH and that Plaintiff had agreed to convert the

project into a condominium.

119.     RLCH Answering Defendants relied upon said statement and invested in RLCH.

120.     As a result of RLCH Answering Defendants' reliance upon said statements,

RLCH Answering Defendants have been injured as follows:  1) Loss of value of each

party's respective shares in an amount to be determined at trial; 2) loss of profit caused

by Plaintiff's failure to cooperate with RLCH project's condominium conversion; 3) loss

sustained as a result of escalated real estate taxes due to condominium conversion delays; 4) loss sustained as a result of RLCH Answering Defendants' inability to occupy or lease out the residential units within the RLCH project; 5) loss sustained to maintain the RLCH project building during the resolution of this action; 6) attorney's fees incurred in defending and prosecution this action, all in an amount to be determined at trial.

121. On or about January 1, 2010, Defendants MOU YANG LAM, KWAN CHO CHEUNG, SIU LING WONG, and KAM MING LAM executed a CT-6 Form in the presence of Defendant JOE HSU, which provides, *inter alia*, that each signatory, and Defendant JOE HSU and the Plaintiff, has a 1/6 share in RLCH.

122. After said Answering Defendants executed said CT-6 Form, Defendant JOE HSU said took said Agreement, and promised to get Plaintiff's signature.

123. Shortly thereafter, Defendant JOE HSU provided a copy of said CT-6 Form with a signature for the Plaintiff to Defendant MOU YANG LAM, and represented to MOU YANG LAM that Plaintiff had signed said CT-6 Form.

124. In the event that Plaintiff succeeds on his claim that he never signed any document which provides that he owns 1/6 of RLCH, then RLCH Answering Defendants allege the following:

125. Defendant JOE HSU's representations contained in Paragraphs 122 and 123 are false.

126. Upon information and belief, Defendant JOE HSU knew his representations contained in Paragraphs 122 and 123 to be false when he made it.

127. Upon information and belief, Defendant JOE HSU made the representations contained in Paragraphs 122 and 123 to induce RLCH Answering Defendants' reliance

upon said statement so they would continue to invest in RLCH with the belief that they are entitled to a total of 2/6 of all outstanding shares of RLCH.

128.     RLCH Answering Defendants relied upon said statements and invested in RLCH with the belief that they are entitled to a total of 2/6 of all outstanding shares of RLCH.

129.     As a result of RLCH Answering Defendants' reliance upon said statement, RLCH Answering Defendants have been injured in the form of dilution of their shares of RLCH, with a monetary value to be determined at trial.

130.     In or about the beginning of March 2012, Defendants MOU YANG LAM, KWAN CHO CHEUNG, SIU LING WONG, KAM MING LAM, and nonparty shareholder Cheung Chin Chau executed a CT-6 Form in the presence of Defendant JOE HSU, which provides, *inter alia*, that each signatory, and Defendant JOE HSU and the Plaintiff, each has a 1/6 share in RLCH.

131.     After said Answering Defendants executed said CT-6 Form, Defendant JOE HSU said took said Agreement, and promised to get Plaintiff's signature.

132.     Shortly thereafter, Defendant JOE HSU provided a copy of said CT-6 Form with a signature for the Plaintiff to Defendant MOU YANG LAM, and represented to MOU YANG LAM that Plaintiff had signed said CT-6 Form.

133.     In the event that Plaintiff succeeds on his claim that he never signed any document which provides that he owns 1/6 of RLCH, then RLCH Answering Defendants allege the following:

134.     Defendant JOE HSU's representations contained in Paragraphs 131 and 132 are false.

135.    Upon information and belief, Defendant JOE HSU knew his representations
contained in Paragraphs 131 and 132 to be false when he made it.

136.    Upon information and belief, Defendant JOE HSU made the representations
contained in Paragraphs 131 and 132 to induce RLCH Answering Defendants' reliance
upon said statement so they would continue to invest in RLCH with the belief that they
are entitled to a total of 2/6 of all outstanding shares of RLCH.

137.    RLCH Answering Defendants relied upon said statement and invested in RLCH
with the belief that they are entitled to a total of 2/6 of all outstanding shares of RLCH.

138.    As a result of RLCH Answering Defendants' reliance upon said statement, RLCH
Answering Defendants have been injured in the form the dilution of their shares of RLCH,
with a monetary value to be determined at trial.

## AS AND FOR A FIFTH CROSS-CLAIM AGAINST JOE HSU AND ESTHER HSU – Direct Action for Unjust Enrichment

139.    Answering Defendants repeat and reallege each and every allegation set forth
above as if fully set forth herein.

140.    Answering Defendants have been unjustly enriched at Answering Defendants'
expense, as set forth above, in an amount to be determined at trial, plus applicable interest.

## AS AND FOR A SIXTH CROSS-CLAIM AGAINST JOE HSU AND ESTHER HSU – Direct Action for Accounting

141.    Answering Defendants repeat and reallege each and every allegation set forth
above as if fully set forth herein.

142.    Based upon the aforesaid, Answering Defendants Paragraphs 131 and 132 are

entitled to a full accounting in connection with all of the underlying projects set forth in

Plaintiff's Complaint, as well as full and unfettered access to all books and records for

all of the projects, both in corporate and individuals names.

## COUNTERCLAIMS

### AS AND FOR A FIRST COUNTER-CLAIM Against Plaintiff for An Accounting

143.    Answering Defendants who are shareholders of CHRL and 190 Corp. repeat and

reallege each and every allegation set forth above as if fully set forth herein.

144.    Plaintiff, as the shareholder who completely operated and controlled all of the

construction aspect of the CHRL Project and 190 Corp. Project, was a *de facto* director

and officer of CHRL and 190 Corp.

145.    Upon information and belief, the source of information being Defendant JOE

HSU and Defendant ESTHER HSU's Verified Answer and Counterclaim, Plaintiff used

the business of CHRL, 190 Corp. and RLCH to further his own financial ends by

engaging in self-dealing and by not acting in the best interests of Defendants CHRL, 190

Corp. and RLCH.

146.    Upon information and belief, the source of information being Defendant JOE

HSU and Defendant ESTHER HSU's Verified Answer and Counterclaim, Plaintiff

caused Defendants CHRL, 190 Corp. and RLCH to suffer damages by failing to

cooperate with the effective organization and running of Defendants CHRL, 190 Corp.

and RLCH; and by failing to cooperate in connection with the acquisition, development, and sale of the properties.

147.　　Upon information and belief, the source of information being Defendant JOE HSU and Defendant ESTHER HSU's Verified Answer and Counterclaim, Plaintiff wholly failed to demand payment for any labor or materials that for which he was not paid.

148.　　Upon information and belief, the source of information being Plaintiff's Verified Complaint, Defendants JOE HSU and ESTHER HSU failed and refused to provide genuine backup of all of the paperwork for all of their transactions which they had been working on since 2005.

149.　　Defendants JOE HSU and ESTHER HSU failed and refused to provide the details of the transactions of the CHRL Project and the 190 Project and the financial outcomes of the same.

150.　　Upon information and belief, the source of information being Plaintiff's Verified Complaint, Defendants JOE HSU and ESTHER HSU failed to properly account to the Plaintiff for his labor and materials furnished to the CHRL Project and the 190 Corp. Project.

151.　　Upon information and belief, the source of information being Plaintiff's Verified Complaint, Defendants JOE HSU and ESTHER HSU commingled funds belonging to the Plaintiff into the accounts of RLCH Project.

152.　　Plaintiff failed to provide an accounting for the labor and materials for which he was allegedly not paid.

153.    At all relevant times, it was and continues to be the duty of the Plaintiff, as a *de facto* director and officer of Defendants CHRL, 190 Corp. and RLCH, to see that the assets and business of Defendants CHRL, 190 Corp. and RLCH were and are diligently and honestly conserved and managed, and to see that same are not dissipated and mismanaged.  In violation of his duty, he committed the foregoing acts.

154.    As a result of the acts alleged, Plaintiff has directly and indirectly profited and are continuing to profit at the expense of Defendants CHRL, 190 Corp. and RLCH, and Defendants CHRL, 190 Corp. and RLCH have sustained and is continuing to sustain additional losses, all in an amount presently unknown to Answering Defendants and ascertainable only by an accounting.

155.    No demand has been made upon the Board of Directors of Defendants CHRL, 190 Corp. and RLCH to bring an action for relief appropriate to the facts alleged, inasmuch as: 1) Plaintiff, whose acts are complained of is in control of Defendants CHRL, 190 Corp. and RLCH; and 2) no Board of Directors were ever elected for Defendants CHRL, 190 Corp. and RLCH.  A demand upon the Board of Directors would therefore be a futile act.

156.    By virtue of the acts complained of, Defendants CHRL, 190 Corp. and RLCH have sustained and are continuing to sustain irreparable injury.

157.    Answering Defendants have no adequate remedy at law.

## AS AND FOR A SECOND COUNTER-CLAIM Against Plaintiff
### Derivative Action for Breach of Fiduciary Duty of Care, Duty of Loyalty, and Duty of Disclosure

158.    Answering Defendants repeat and reallege each and every allegation set forth above as if fully set forth herein.

159.    As a *de facto* director and officer of Defendants CHRL, and 190 Corp., Plaintiff owes a fiduciary duty to each of said Corporate Defendants' shareholders.

160.    Plaintiff owes a duty of disclosure to each of said Corporate Defendants' shareholders

161.    Plaintiff operated and controlled all aspects of the construction of the real properties of the CHRL Project and the 190 Corp. Project.

162.    Plaintiff now claims that he was not adequately compensated for his labor and materials furnished in said projects.

163.    Said transactions between the Plaintiff and said Corporate Defendants are interested director transactions.

164.    Plaintiff breached his duty of disclosure by failing to disclose the details and material facts of said interested director transactions, i.e. the construction of all of the real estate properties involved in the CHRL Project and the 190 Corp. Project.

165.    As a result of Plaintiff's foregoing breaches, shareholders of said Corporations have been damaged in an amount to be determined at trial, for which Plaintiff is personally liable.

## AS AND FOR A THIRD COUNTER-CLAIM Against Plaintiff for Breach of Contract

166. Answering Defendants repeat and reallege each and every allegation set forth above as if fully set forth herein.

167. Plaintiff is in breach of the December 23, 2008 Agreement by failing to cooperate with the condominium conversion.

168. The December 23, 2008 Agreement provided that RLCH intends to develop 144-73 Barclay Avenue, Flushing, NY 11355 to create a multi-unit Condominium thereon, with a view to selling the units after the completion of construction and approval of the condominium.

169. Pursuant to another written agreement dated September 18, 2014 (hereinafter, "The September 18, 2014 Barclay Agreement"), through a lottery, Plaintiff agreed to divide up the six (6) completed residential units of RLCH's Barclay Garden building, located at 144-69 Barclay Avenue, Flushing, New York, 11355 with the other shareholders of RLCH. It was mutually understood that each shareholder may use or sell his or her residential unit so obtained.

170. To effectuate said agreement, in order for RLCH shareholders to sell his or her designated residential unit, the Barclay Garden building must be converted to a condominium.

171. In breach of said agreement, Plaintiff refused and continues to refuse to cooperate in the condominium conversion.

172. In breach of said agreement, Plaintiff brought the instant lawsuit, seeking a permanent injunction against the condominium conversation of the Barclay Garden building.

173.    As a result of Plaintiff's foregoing breach, participating Answering Defendants have suffered economic damage, including, but not limited to, continued carrying charges for the unconverted Barclay Garden building including real estate taxes, costs incurred to defend against the instant lawsuit, the opportunity costs from the inability to sell each of their units, the value of use and occupancy of the residential units, all in an amount to be determined at trial.

## AS AND FOR A FOURTH COUNTER-CLAIM Against Plaintiff for Specific Performance to Cooperate with Condominium Conversion.

174.    Answering Defendants repeat and reallege each and every allegation set forth above as if fully set forth herein.

175.    Participating Answering Defendants have at all times been ready and able to complete the condominium conversion of the Barclay Garden building.

176.    Participating Answering Defendants have no remedy at law.

## AS AND FOR A FIFTH COUNTER-CLAIM Against Plaintiff for Declaratory Judgment that Plaintiff is a 1/6 Owner of RLCH.

177.    Answering Defendants repeat and reallege each and every allegation set forth above as if fully set forth herein.

178.    Upon information and belief, Plaintiff executed the December 23, 2008 Agreement concerning the RLCH Project whereby Plaintiff agreed that he would receive 1/6 of the net profits derived from the project.

179.     In accordance with said agreement, Plaintiff contributed 1/6 of all expenditures of the RLCH Project.

180.     The RLCH Project initially started out with only 144-73 Barclay Avenue, Flushing, NY 11355 property, but ultimately included the 144-69 Barclay Avenue, Flushing, NY 11355 property when it became available for purchase by RLCH.

181.     Upon information and belief, in accordance with said agreement, on or about January 1, 2010, Plaintiff executed a CT-6 Form for the New York State Department of Taxation and Finance whereby he acknowledge that he owned 1/6 of the shares of RLCH.

182.     Upon information and belief, in accordance with said agreement, on a separate occasion aside from the aforementioned January 1, 2010 execution, on or about beginning of March 2012, Plaintiff executed another CT-6 Form for the New York State Department of Taxation and Finance whereby he acknowledge that he owned 3/36 of the shares of RLCH.

183.     Plaintiff had contributed only a 1/6 share of all monetary contributions required of shareholders for RLCH.

184.     Based on the foregoing, participating Answering Defendants are entitled to a declaratory judgment that Plaintiff is a 1/6 owner of the shares of RLCH.


### AS AND FOR A SIXTH COUNTER-CLAIM Against Plaintiff
### for Reformation of a so-called "Lottery Agreement".


185.     RLCH Answering Defendants repeat and reallege each and every allegation set forth above as if fully set forth herein.

186. RLCH Answering Defendants plead in the alternative to the applicable

Affirmative Defenses to Plaintiff's Fifteen Cause of Action the following:

187. On or about September 18, 2014, a certain so-called "Lottery Agreement" was

created by the following parties, to wit: JOE HSU, MANUEL ROEL, MOU YANG

LAM, KWANG CHO CHEUNG, SIU LING WONG, and KAM MING LAM

(hereinafter, "the participating parties").

188. Upon information and belief, sad Lottery Agreement was prepared without

counsel or legal advice.

189. Said document states that the Barclay Project has six (6) residential floors, and

that each of the said six parties would get a designated floor through a lottery.

190. A lottery or raffle was conducted among the six said parties on or about

September 18, 2014, whereby each party blindly drew for a number representing a floor

within the Barclay Project.

191. The result of said lottery or raffle was memorialized on said Lottery Agreement.

192. Upon information and belief, it was the express intention of the participating

parties that upon such time that the individual floors and/or units of the Barclay Project

may legally be distributed among the parties, that such distribution be consistent with the

results of the Lottery Agreement.

193. The parties believed that the Lottery Agreement, as written, does not violate any

applicable law.

194. If this Honorable Court determines that the Lottery Agreement, as written, is void

*ab initio* due to the fact that the floors and/or units were not capable of being alienated at

the time the Lottery Agreement was executed, then it is alleged that the participating

parties made a mutual mistake of law.

195.　　　Equity should permit this mutual mistake of law by the parties to be corrected to

allow the reformation of the Lottery Agreement to reflect the fact that upon such time

that the individual floors and/or units of the Barclay Project may legally be distributed

among the parties, that such distribution be consistent with the results of the Lottery

Agreement.

196.　　　RLCH Answering Defendants have no adequate remedy at law.


WHEREFORE, Answering Defendants, on their own behalf and for the benefit of Corporate

Defendants CHRL, 190 Corp., and RLCH, respectfully request that portions of Plaintiff's

Complaint seeking relief against any of the Answering Defendants be dismissed, and that this

Court enter judgment in their favor, as follows:

1) On their First Cross-Claim against JOE HSU and ESTHER HSU for an accounting, that

Defendants JOE HSU and ESTHER HSU provide an accounting on all the projects of

CHRL, 190 Corp., and RLCH, and that they provide access to all the books and records

for all of said projects;

2) On their Second Cross-Claim against JOE HSU and ESTHER HSU for Breach of

Fiduciary Duty of Care, Duty of Loyalty, and Duty of Disclosure, that Defendants JOE

HSU and ESTHER HSU account for their conduct so that the damages that Corporate

Defendants CHRL, 190 Corp., and RLCH have sustained by reason of the facts alleged

may be ascertained and determined; that Defendants JOE HSU and ESTHER HSU be

ordered to pay the damages sustained by reason of the matters alleged herein; that the

self-dealing transactions of Defendants JOE HSU and ESTHER HSU be voided and that

Defendants JOE HSU and ESTHER HSU disgorge any profits made thereon;

3) On their Third Cross-Claim against JOE HSU for fraud, damages in an amount to be

determined at trial;

4) On their Fourth Cross-Claim against JOE HSU for fraud, damages in an amount to be

determined at trial;

5) On their Fifth Cross-Claim against JOE HSU and ESTHER HSU for unjust enrichment,

damages in an amount to be determined at trial;

6) On their Sixth Cross-Claim against JOE HSU and ESTHER HSU, that Defendants JOE

HSU and ESTHER HSU provide an accounting on all the projects of CHRL, 190 Corp.,

and RLCH, and that they provide access to all the books and records for all of said

projects;

7) On their First Counter-Claim against Plaintiff MANUEL ROEL for an accounting, that

Plaintiff provide an accounting of all the construction on all the projects of CHRL, and

190 Corp., and that he provide access to all the books and records for all of said

construction;

8) On their Second Counter-Claim against Plaintiff MANUEL ROEL for breach of

fiduciary duty of care, duty of loyalty, and duty of disclosure, that Plaintiff account for

his conduct so that the damages that Corporate Defendants CHRL, and 190 Corp. have

sustained by reason of the facts alleged may be ascertained and determined; that the

Plaintiff be ordered to pay the damages sustained by reason of the matters alleged herein;

that the self-dealing transactions of Plaintiff be voided and that Plaintiff disgorge any

profits made thereon;

9)  On their Third Counter-Claim against Plaintiff MANUEL ROEL for breach of contract, that Plaintiff pay damages in an amount to be determined at trial;

10) On their Fourth Counter-Claim against Plaintiff MANUEL ROEL for Specific Performance to Cooperate with Condominium Conversion, that Plaintiff be ordered to cooperate with the condominium conversion of the Barclay Gardens building located at 144-69 Barclay Avenue, Flushing, NY 11355;

11) On their Fifth Counter-Claim against Plaintiff MANUEL ROEL for Declaratory Judgment, a declaratory judgment that Plaintiff is a 1/6 owner of RLCH; and

12) On their Sixth Counter-Claim as an alternative to the relevant Affirmative Defenses to Plaintiff's Fifteenth Cause of Action, reformation of the so-called Lottery Agreement; and

13) Award Answering Defendants costs and attorney's fees, and grant such other relief as the Court deems just and proper.

Dated: Flushing, New York
     January **31**, 2019

LAW OFFICE OF AMY Y. CHEN, PLLC
*Attorney for Defendants MOU YANG LAM,*
*KWAN CHO CHEUNG, MING KAM*
*CHEUNG, HEONG LENG LOU, STEVEN*
*CHEUNG, MING YUNG CHEUNG, and*
*GUI ZHEN CHEN*

By:     _____
          AMY Y. CHEN
          41-25 Kissena Blvd., Ste. 128
          Flushing, NY 11355
          (718) 321-8056
          Fax: (718) 321-8057

Case 1:20-01102-reg   Doc 15   Filed 08/28/20   Entered 08/28/20 17:03:31

## VERIFICATION

STATE OF NEW YORK      )

COUNTY OF _Queens_ ) ss.:

MOU YANG LAM, being duly sworn, deposes and says:

I am MOU YANG LAM, one of the defendants in the foregoing Verified Answer with

Counterclaims and Cross-claims to First Amended Complaint.  I have read the foregoing

Amended Verified Answer with Counterclaims and Cross-claims and I certify that the contents

therein are true to my own knowledge and belief, except as to those matters alleged to be upon

information and belief; and as to those matters, your deponent believe them to be true.

_____
MOU YANG LAM

Sworn to before me this
_31st_ day of _January_, 2019

_____
Notary Public

AMY Y. CHEN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02CH6150270
Qualified in Nassau County
Commission Expires July 24, 2027

## VERIFICATION

STATE OF NEW YORK    )

COUNTY OF *Queens* ) ss.:

    KWAN CHO CHEUNG, being duly sworn, deposes and says:

    I am KWAN CHO CHEUNG, one of the defendants in the foregoing Verified Answer

with Counterclaims and Cross-claims to First Amended Complaint. I have read the foregoing

Amended Verified Answer with Counterclaims and Cross-claims and I certify that the contents

therein are true to my own knowledge and belief, except as to those matters alleged to be upon

information and belief; and as to those matters, your deponent believe them to be true.

                                                      KWAN CHO CHEUNG

Sworn to before me this
31st day of *January*, 2019

Notary Public

AMY Y. CHEN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02CH6150270
Qualified in Nassau County
Commission Expires July 24, 2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-----------------------------------------------------------------------X
MANUEL ROEL, Individually and Derivatively
as 50% Shareholder of ROEL & HSU CORP.,
as 25% Shareholder of CHRL REALTY CORP.,
as 25% Shareholder of RLCH, INC., and as 25%
Shareholder of 190-15 48th AVENUE CORP.,

Index No. 709652-2017

                          Plaintiff,

          -against-

**AFFIDAVIT OF SERVICE**

JOE HSU, ESTHER HSU, ROEL & HSU CORP.,
RLCH, INC, CHRL REALTY CORP.,
190-15 48th AVENUE CORP., MOU YANG LAM,
KWAN CHO CHEUNG, MING KAM CHEUNG,
HEONG LENG LOU, JIN GUO LIN, KAM MING
LAM, and SIU LING WONG,

                         Defendants.
-----------------------------------------------------------------------X

STATE OF NEW YORK    )
                             ) S.S.:
COUNTY OF QUEENS    )

     I, KYSUNG HAN, being duly sworn, hereby depose and say: I am not a party to the action, am over 18 years of age and work at 41-25 Kissena Blvd., Suite 128, Flushing, NY 11355. On January 31, 2019, I served the within VERIFIED ANSWER WITH COUNTERCLAIMS AND CROSS-CLAIMS TO FIRST AMENDED COMPLAINT, by E-filing it to the NYSCEF system: ROBERT D. WERTH, ESQ., 666 Greenwich Street, Suite 507, New York, New York 10014; JACK L. GLASSER, P.C., 8910 Sutphin Blvd., Jamaica, New York 11435; LAW OFFICES OF YANG & ASSOCIATES, 9 East Broadway, Suite 302, New York, NY 10038; and HERRICK, FEINSTEIN LLP, 2 Park Avenue, New York, New York 10016.

                                          KYSUNG HAN

Sworn to before me on
January 31, 2019

AMY Y CHEN
Notary Public – State of New York
No. 02CH6150270
Qualified in Nassau County
My Commission Expires July 24, 2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

-----------------------------------------------------------------------X

MANUEL ROEL, Individually and Derivatively
as 50% Shareholder of ROEL & HSU CORP.,
as 25% Shareholder of CHRL REALTY CORP.,
as 25% Shareholder of RLCH, INC., and as 25%
Shareholder of 190-15 48th AVENUE CORP.,

                                        Plaintiff,

            -against-

JOE HSU, ESTHER HSU, ROEL & HSU CORP.,
RLCH, INC, CHRL REALTY CORP.,
190-15 48th AVENUE CORP., MOU YANG LAM,
KWAN CHO CHEUNG, MING KAM CHEUNG,
HEONG LENG LOU, JIN GUO LIN, KAM MING
LAM, and SIU LING WONG,

                                        Defendants.

-----------------------------------------------------------------------X

## VERIFIED ANSWER WITH COUNTERCLAIMS AND CROSS-CLAIMS TO FIRST AMENDED COMPLAINT

**PART 130 CERTIFICATION:** I hereby certify that all of the papers that I have served, filed or submitted to the court in this divorce are not frivolous as defined in subsection (c) of Section 130-1.1 of the Rules of the Chief Administrator of the Courts.

Dated:          Flushing, New York
                January 31, 2019

                                        Law Office of Amy Y. Chen, PLLC
                                        *Attorney for Defendants* MOU YANG
                                        LAM, KWAN CHO CHEUNG, MING
                                        KAM CHEUNG, HEONG LENG LOU,
                                        STEVEN CHEUNG, MING YUNG
                                        CHEUNG, and GUI ZHEN CHEN

            By:

                                        Amy Y. Chen, Esq.
                                        41-25 Kissena Blvd., Suite 128
                                        Flushing, NY 11355
                                        Phone:  (718) 321-8056
                                        Fax:    (718) 321-8057

**Law Office of Amy Y. Chen, PLLC**
41-25 Kissena Blvd., Suite 128
Flushing, New York 11355
(718) 321-8056
Fax: (718) 321-8057